No. 97-711

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 268

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN RICHARD MORGAN,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Harold H. Harrison and Royal Aubrey Davis,

Attorneys at Law, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Mike McGrath, Lewis and Clark County Attorney;

Vicki Frazier, Deputy County Attorney; Helena, Montana

Submitted on Briefs: June 11, 1998

Decided: November 12, 1998

No

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. John Richard Morgan was charged by information in the First Judicial District Court, Lewis and Clark County, with one count of incest, in violation of § 45-5-507, MCA. Morgan filed a motion to dismiss on April 10, 1997, and the District Court denied his motion on June 2, 1997. On June 11, 1997, a jury found Morgan guilty. Morgan filed a motion for a new trial on July 11, 1997. Following a hearing, the District Court denied the motion on September 19, 1997. On October 30, 1997, the District Court sentenced Morgan to a term of twelve years at the Montana State Prison, with four years suspended. Morgan filed a notice of appeal on November 12, 1997. We affirm the judgment of the District Court.**

**¶2. The issues presented on appeal are as follows:**

**¶3. 1. Did the District Court err when it denied Morgan's motion to dismiss based upon its conclusion that § 45-5-507, MCA, does not violate Article V, Section 11(3), of the Montana Constitution?**

**¶4. 2. Did the District Court abuse its discretion when it allowed the State to present expert testimony regarding child sexual abuse?**

**¶5. 3. Did the District Court abuse its discretion when it denied Morgan's motion for a new trial which he based upon his contention that the District Court erred when it admitted certain testimony by the State's expert witness?**

**¶6. 4. Did the District Court abuse its discretion when it denied Morgan's motion for a new trial which Morgan based upon his contention that the State had prevented Karen Morgan from testifying?**

## FACTUAL BACKGROUND

**¶7. Morgan and his wife, Mary, reside in a small two-bedroom mobile home in Helena. Mary's fifteen-year-old daughter from a former marriage, E.G., resides with her father in a small town near Kalispell. In December 1996, E.G. went to Helena to visit her mother and her stepfather, Morgan. Morgan's seventeen-year-old daughter, Karen Morgan, who lives with Morgan's former wife in Florida, was also visiting the Morgans in Helena that December.**

**¶8. After staying up all night on December 25, 1996, Karen and E.G. went with Mary and Morgan to take Mary to work. When the three of them returned to the mobile home, Karen and E.G. decided to get some sleep. Karen went to sleep in the middle bedroom, and E.G. changed into her nightgown and was going to sleep on the couch in the living room. However, as E.G. testified at trial, Morgan told E.G. that she could lie down with him in his bed in the back bedroom. E.G. went to the back bedroom and fell asleep.**

**¶9. E.G. woke up and felt Morgan touching her. E.G. testified that Morgan was touching her underneath her nightgown, placing his hands beneath her bra and beneath her panties. When Morgan unsnapped E.G.'s bra, E.G. got up from the bed and went out to the living room. She told Morgan that she was going to watch a video. Morgan followed her to the living room and told E.G. that she could watch the video in the back bedroom. At first E.G. declined, but Morgan insisted, so E.G. went back to Morgan's bedroom to watch the video.**

**¶10. While E.G. and Morgan were in the back bedroom the second time, Morgan began touching E.G. again in her breast and pubic areas. Morgan told E.G. that she was beautiful and sexy. He asked E.G. some sexually explicit questions and propositioned her sexually. Although E.G. had studied reproduction in health class and believed she knew what Morgan was asking, she testified that she herself had never used the sexual terms that Morgan used.**

**¶11. E.G. told Morgan "no" and went back out to the living room. E.G. started cleaning, and Morgan came back out to the living room and got something to eat. Morgan and E.G. then played some board games and watched television. Karen was still sleeping, and neither E.G. nor Morgan mentioned what had happened in the back bedroom.**

¶12. Shortly before 2:00 p.m. Morgan left to pick Mary up from work. While he was gone, E.G. received a phone call from her father in Kalispell. During the call, E.G. also talked with Donna Sausedo, who lives with E.G.'s father and has been a mother figure for E.G. for several years. E.G. began crying and told Donna what had happened that morning. Donna and E.G.'s father notified law enforcement authorities and left at once for Helena.

¶13. After speaking with Donna, E.G. told Karen what had happened and why she was crying. When Morgan returned with Mary, Karen told E.G. that she should tell Mary as well. After E.G. told Mary, Morgan learned that officers would be coming out to his residence and, therefore, decided to leave E.G. with Karen and go to the police station with Mary to talk with a deputy sheriff about the incident.

¶14. Morgan told the deputy that he fell asleep on the bed and awoke to find that he had his arms around E.G. and one hand on her breast. He stated that he thought that it was his wife, Mary, in bed with him and that when he realized it was E.G., he removed his hand and told E.G. that she would have to get out of bed. When told that E.G. had a different account of the incident, Morgan modified his account by stating that he awoke with his hand going up E.G.'s hip and across her lower abdomen, and up her breast. According to Morgan, he then realized that the body next to him was not his wife's.

## ISSUE 1

¶15. Did the District Court err when it denied Morgan's motion to dismiss based upon its conclusion that § 45-5-507, MCA, does not violate Article V, Section 11(3), of the Montana Constitution?

¶16. Morgan's first issue on appeal arises from the District Court's denial of his pretrial motion to dismiss the charge of incest. Morgan maintains that Montana's incest statute, § 45-5-507, MCA, was amended in violation of Article V, Section 11(3), of the Montana Constitution, which requires each legislative bill to contain only one subject clearly expressed in its title. Morgan claims that because of this, the statute is void and the offense is not a crime. Morgan also argues that since marriage between a stepfather and a stepdaughter is not explicitly prohibited by statute, his conduct with E.G. could not be considered incest.

¶17. We have held that the grant or denial of a pretrial motion to dismiss in a criminal case presents a question of law for review on appeal. The standard of review of a district court's conclusions of law is plenary, and this Court reviews the conclusions to determine if they are correct. *See State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195; *State v. Sage* (1992), 255 Mont. 227, 229, 841 P.2d 1142, 1143. Upon plenary review, we affirm the District Court's denial of Morgan's motion to dismiss.

A. Constitutionality of § 45-5-507, MCA

¶18. Article V, Section 11(3), of the Montana Constitution provides in pertinent part that:

Each bill, except general appropriation bills and bills for the codification and general revision of the laws, shall contain only one subject, clearly expressed in its title. If any subject is embraced in any act and is not expressed in the title, only so much of the act not so expressed is void.

Subsection (6) of this section further provides, however, that "[a] law may be challenged on the ground of noncompliance with this section only within two years after its effective date."

¶19. The 1983 Montana Legislature amended the incest statute, which was then codified as § 45-5-613, MCA, to include within its protective scope any stepchild who has not been adopted by the offender. *See* 1983 Mont. Laws, ch. 438. The amendment became effective on October 1, 1983, and is contained within the incest statute now codified as § 45-5-507, MCA. The title to the bill reads as follows:

AN ACT TO AMEND THE DEFINITION OF THE CRIME OF INCEST TO INCLUDE ANY SEXUAL CONTACT; TO EXTEND THE DEFINITION TO INCLUDE ANY STEPSON OR STEPDAUGHTER WHO HAS NOT BEEN ADOPTED BY THE PERSON COMMITTING THE OFFENSE; PROVIDING FOR THE DEFENSE OF CONSENT; AMENDING SECTION 45-5-613, MCA.

¶20. In order to determine whether the 1983 legislation contains multiple subjects not clearly expressed in the title, we must look to the policy behind Article V, Section

11(3), of the Montana Constitution. In *Montana Automobile Ass'n v. Greely* (1981), 193 Mont. 378, 632 P.2d 300, we stated that:

The purpose of requiring singleness of subject is to prevent the practice of embracing in the same bill incongruous matters which have no relation to each other or to the subject specified in the title, so that measures may not be adopted without attracting attention to them. *Rosebud County v. Flinn* (1940), 109 Mont. 537, 543-44, 98 P.2d 330, 334; *Jobb v. Meagher County* (1898), 20 Mont. 424, 437, 51 P. 1034, 1038.

*Montana Auto. Ass'n,* 193 Mont. at 398, 632 P.2d at 311. We further stated that "[t]he test under this provision of the Montana Constitution is simply whether the title is of such character as to mislead the public as to the subjects embraced." Montana Auto. Ass'n, 193 Mont. at 398, 632 P.2d at 311 (citing City of Helena v. Omholt (1970), 155 Mont. 212, 220-21, 468 P.2d 764, 768).

¶21. The Act clearly addresses the singular subject of incest. It does not embrace other irrelevant or incongruous matters. We agree with the District Court that the public could not be misled as to the subject discussed, and conclude that the District Court's interpretation of the law was correct.

B. Applicability of § 45-5-507, MCA

¶22. The second part of Morgan's pretrial motion to dismiss, which he raises again on appeal, is his contention that the incest cannot occur and, thus, the criminal statute does not apply, in cases in which the parties involved in the conduct could lawfully marry. Because § 40-1-401, MCA, which lists the marriages prohibited in Montana, does not expressly prohibit a marriage between a stepfather and his stepdaughter, Morgan argues that the crime of incest may not, as a matter of law, be committed by a stepfather upon his stepdaughter.

¶23. We agree with the conclusion of the District Court that Morgan's contention is premised upon his erroneous belief that a marriage between a stepfather and a stepdaughter is not prohibited in Montana. The stepfather/stepdaughter relationship is created when the stepfather marries the stepdaughter's mother, and is terminated when the marriage is dissolved. Section 40-1-401(1)(a), MCA, prohibits a marriage "entered into prior to the dissolution of an earlier marriage of one of the parties." Thus a stepfather could not lawfully marry his stepdaughter during the time the stepfather is married to his stepdaughter's mother and the stepfather/stepdaughter

relationship exists. Morgan could not have lawfully married E.G. at the time of the offense; the premise underlying Morgan's argument, therefore, provides no support for his argument. Accordingly, we conclude that the District Court correctly interpreted the law and did not err when it denied Morgan's motion to dismiss.

## ISSUE 2

¶24. Did the District Court abuse its discretion when it allowed the State to present expert testimony regarding child sexual abuse?

¶25. At trial, the District Court allowed the State to present the testimony of Sandy Ashley, a licensed professional counselor, so long as Ashley's testimony was limited to general matters concerning child sexual abuse. The District Court found that Ashley was qualified to testify in areas in which she works and within the guidelines set forth by this Court and the Legislature.

¶26. Ashley did not investigate E.G.'s case and offered no opinion concerning the credibility of E.G. or any other specific aspect of the case. Instead, Ashley testified about patterns of child sexual abuse and factors to consider in the evaluation of a child's report of sexual abuse. Prior to and after Ashley's testimony, Morgan objected to and later moved to strike Ashley's testimony on grounds of relevancy. The District Court overruled the objection and denied the motion to strike.

¶27. On appeal, Morgan contends that the facts of the case could be understood and determined by the jury without the need for expert opinion testimony. Morgan maintains that the District Court erred when it allowed any expert testimony at trial.

¶28. The standard of review of discretionary trial court rulings is abuse of discretion. *See May v. First Nat'l Pawn Brokers, Ltd.* (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. In *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125, we held that "[t]he standard of abuse of discretion is applied to discretionary rulings, such as trial administration issues, post-trial motions and similar rulings." (Citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603).

¶29. Morgan does not dispute Ashley's qualifications. Instead, he suggests that the subject of child sexual abuse does not require any expert testimony to assist the understanding of the jury. However, we have consistently upheld, pursuant to Rule

702, M.R.Evid., the use of expert testimony to explain the complexities of child sexual abuse and to give guidance which would help jurors understand and judge the victim's testimony. *See State v. Alexander* (1994), 265 Mont. 192, 875 P.2d 345; *State v. McLain* (1991), 249 Mont. 242, 815 P.2d 147; *State v. Donnelly* (1990), 244 Mont. 371, 798 P.2d 89, *overruled on other grounds by State v. Imlay* (1991), 249 Mont. 82, 91, 813 P.2d 979, 985.

¶30. In *State v. Scott* (1993), 257 Mont. 454, 850 P.2d 286, we held that:

Expert testimony relating to the contradictory behavior . . . of a child victim of sexual abuse, will be allowed to enlighten the jury on a subject with which most people have no common experience and to assist the jurors in assessing the credibility of the victim.

*Scott*, 257 Mont. at 456, 813 P.2d at 292. *Such testimony does not impinge upon the jury's ultimate obligation to decide the credibility of the victim. See Donnelly, 244 Mont. at 378, 798 P.2d at 93, overruled on other grounds by Imlay, 249 Mont. at 91, 813 P.2d at 985.*

¶31. In this case, Ashley gave general information to the jurors about the factors which may be used when assessing a case of alleged child sexual abuse. Her expertise concerned a subject about which lay persons would have little or no experience. We agree with the District Court that the expert testimony was clearly admissible pursuant to our prior decisions which address the issue of expert testimony in child sexual abuse cases. Accordingly, we conclude that the District Court did not abuse its discretion when it allowed the expert testimony.

## ISSUE 3

¶32. Did the District Court abuse its discretion when it denied Morgan's motion for a new trial which he based upon his contention that the District Court erred when it admitted certain testimony by the State's expert witness?

¶33. A district court may grant a motion for a new trial if required "in the interest of justice." Section 46-16-702 (1), MCA. The District Court's exercise of discretion concerning whether to grant a motion for new trial will be affirmed on appeal in the absence of a manifest abuse of discretion. *See State v. Hatfield* (1995), 269 Mont. 307, 308, 888 P.2d 899, 900.

¶34. Morgan first argues that the District Court improperly allowed the State's expert witness, Sandy Ashley, to confirm and bolster the testimony of the victim. He bases this argument upon the following exchange which occurred during cross-examination:

Q: (DEFENSE COUNSEL): You are not acquainted with any of the parties, are you?

A: No, I'm not.

Q: So as you sit here testifying today, you don't know whether there was any sexual abuse in this case or not, isn't that right?

A: I don't know. I'm assuming there was, or I wouldn't have been asked to talk about it. But no, I don't know.

Q: You assumed?

A: I'm assuming this case is about that, or I wouldn't have been asked to testify. But I don't know.

¶35. The District Court found that Ashley's response to defense counsel's questions established merely that she assumed the case involved an allegation of sexual abuse and that she did not know whether any sexual abuse had actually occurred. The District Court did not find Ashley's response to be prejudicial or find it to be a comment on E.G.'s credibility.

¶36. We conclude that the District Court's ruling falls within the wide latitude accorded to district courts in discretionary matters. Ashley's response to defense counsel's questions did not bolster or confirm E.G.'s account of the incident. Ashley

repeatedly stated that she did not investigate the case and that it was not her purpose to give an opinion about the case. Her second response clarified that her assumption went only to the nature of the case and that she did not know whether any sexual abuse had occurred.

¶37. Morgan also contends that the District Court improperly permitted Ashley to testify about the pattern of sexual abuse within families in which the perpetrator forms a close, positive, and ultimately seductive relationship with the child victim, which results in the child's confusion and mixed feelings about the sexual incident. However, upon review of Ashley's complete testimony, we agree with the District Court that this testimony was part of Ashley's general explanation of child sexual abuse and the contradictory behavior sometimes seen in child victims. Ashley's testimony did not comment upon or conform to E.G.'s account of the incident and cannot be viewed as an expert opinion on E.G.'s credibility.

¶38. Morgan further alleges error when the District Court allowed Ashley to testify to "evidence that had a tendency to suggest a decision (verdict) on an improper basis" and "to describe the reactions of other alleged victims of sexual assault in the absence of an attack on the character for truthfulness of the complaining witness." However, aside from quoting decisions from other jurisdictions, Morgan does not refer to specific portions of Ashley's testimony to support these claims of error. Again, our review of Ashley's testimony shows no departure from the proper purposes for which it was offered. Accordingly, we conclude that the District Court did not abuse its discretion when it allowed Ashley's testimony.

¶39. Morgan appeals the District Court's decision to overrule his objection regarding the relevancy of Ashley's testimony which described other cases "where the parties involved have some relationship and what was done, what was said." However, our review of Ashley's testimony leads us to conclude that the statements to which Morgan objects are part of an extended discussion of the factors which may be taken into consideration when assessing an allegation of child sexual abuse. Ashley's testimony, both before and after Morgan's objection, falls within our guidelines for expert opinion testimony in such cases. Rules 703 and 705, M.R.Evid., permit an expert to discuss the underlying facts or data upon which the expert bases an opinion, and a district court has broad discretion to determine the relevance of the proposed expert testimony. *See Thomsen v. State* (1992), 253 Mont. 460, 462, 833 P.2d 1076, 1077. Because Ashley's testimony was merely an explanation of factors that an

expert, such as herself, would take into consideration when assessing a child sexual abuse case, we conclude that the District Court did not abuse its discretion when it overruled Morgan's objection and allowed her to testify.

¶40. Morgan's remaining issues regarding Ashley's testimony are premised upon his assertion that Ashley implicitly gave an expert opinion on the credibility of E.G. The cases Morgan cites in support of his position involve expert witnesses whose testimony directly supports the credibility of the victim. However, our review of the record shows that Ashley did not mention E.G. in her testimony, did not state that she believed E.G.'s account, and did not suggest that all children who allege abuse should be believed. At no point did Ashley comment, directly or indirectly, on E.G.'s credibility. The jury was free to accept or reject the testimony offered by Ashley and her testimony did not impinge upon the jury's duty to decide the issue of E.G.'s credibility.

¶41. Accordingly, we conclude that the District Court did not abuse its discretion when it denied Morgan's motion for a new trial which was based upon the alleged impropriety of Ashley's expert testimony.

ISSUE 4

¶42. Did the District Court abuse its discretion when it denied Morgan's motion for a new trial which Morgan based upon his contention that the State had prevented Karen Morgan from testifying?

¶43. Morgan alleged as the final grounds for his motion for a new trial that he was prevented by the State from presenting the testimony of his daughter, Karen Morgan, at trial. In support of this contention, Morgan submitted an affidavit from Karen Morgan. The State responded by submitting an affidavit from Vicki Frazier, the deputy county attorney who prosecuted the case.

¶44. As previously stated, the standard of review of discretionary trial court rulings is abuse of discretion. *See May*, 270 Mont. at 134, 890 P.2d at 388.

¶45. Karen Morgan, who is Morgan's daughter from a previous marriage, was present in the Morgan home on the day of the incident and gave statements to law enforcement officers following the incident. Both the State and Morgan named

Karen as a witness at trial. However, the State maintains that because of budget concerns, the State decided it would not attempt to bring Karen from Florida to Helena for trial.

¶46. According to Karen, Morgan sent her an airplane ticket so that she could come to the trial. However, just before trial Karen informed her father and the State that she had changed her mind and would not be returning to Helena to testify. Her affidavit alleges that she decided not to come to Helena for the trial because of a conversation she had with the prosecutor, Vicki Frazier, in which she alleges Frazier told her that if she testified at Morgan's trial her testimony could be used against him. Karen also alleges that Frazier told her that Morgan would be convicted whether Karen was at the trial or not. Karen maintains that because of this conversation she was concerned that if she returned to Montana to testify for Morgan she might get herself into trouble or hurt Morgan's case.

¶47. Frazier's affidavit, on the other hand, acknowledges that a conversation took place, but contradicts Karen's suggestion that she improperly threatened Karen or indicated that her testimony was not important.

¶48. The District Court considered both affidavits and found nothing to indicate that the State had somehow prevented Morgan from calling his daughter to testify. In addition, the court noted, Morgan took no steps to have his daughter subpoenaed or to request a continuance when he found out that Karen would not be at the trial. The District Court concluded that Morgan had not presented sufficient grounds to warrant a new trial.

¶49. We agree with the District Court that Morgan was aware of Karen's prospective testimony and her whereabouts and that it was his responsibility to secure her attendance if he deemed it necessary. Accordingly, we conclude that the District Court did not abuse its discretion when it denied Morgan's motion for a new trial based on its conclusion that the prosecution did not prevent the testimony of Karen Morgan.

¶50. The judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY