

DA 12-0096

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 71

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

CHRISTOPHER STEVEN ROBINS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC 10-450
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade M. Zolynski, Chief Appellate Defender; Garrett R. Norcott, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General; Katie Schulz, Assistant
Attorney General, Helena, Montana

                John Parker, Cascade County Attorney; Josh Racki, Deputy County Attorney,
Great Falls, Montana

                                Submitted on Briefs:  November 28, 2012
                                      Decided:  March 19, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Christopher Steven Robins (Robins) appeals from his convictions of Sexual Assault, Incest, and Attempted Sexual Intercourse Without Consent, all felonies, in the Eighth Judicial District Court, Cascade County. We affirm.

¶2 The issue we address on appeal is whether the District Court abused its discretion when it allowed the State to present expert testimony regarding child sexual abuse victims.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Robins was convicted of molesting his step-daughter, C.G., between the spring and fall of 2010. C.G. was thirteen years old during the abuse and fourteen at the time of trial. According to C.G., Robins first abused her during a family trip to Georgia in the spring of 2010. The abuse continued through October 29, 2010. At trial, C.G. recounted a number of incidents when Robins molested her. C.G. testified that Robins touched her breasts and vagina on a number of occasions. He also performed oral sex on her multiple times and unsuccessfully attempted to penetrate her vagina with his fingers, a vibrator, and his penis.

¶4 C.G. testified that, at first, it made her feel loved when Robins told her that she was beautiful and kissed her "how a mother should kiss a father." She also testified that Robins started to treat her better than her siblings after the abuse began. He gave her daily rides to school and bought her breakfast at McDonald's, took her to the shooting range without her siblings, and bought her gifts, including a new hunting bow and a motorcycle.

¶5 In the fall of 2010, C.G. took an eighth-grade sex education class. The sex education class made C.G. realize what Robins had been doing to her was wrong. C.G. wrote a note to Robins on October 29, 2010. She put the note under Robins's pillow inside the pillowcase

2

because she did not want anyone else to see it. The note mentioned the abuse and expressed C.G.'s frustration with Robins. C.G.'s mother found the note only because she took a nap on Robins's pillow. Robins was charged with Incest and two counts of Attempted Sexual Intercourse Without Consent on December 3, 2010. One charge of Sexual Assault was added on May 3, 2011.

¶6 The State filed a Notice of Expert (NOE) on February 2, 2011, to identify Wendy Dutton (Dutton) as an expert that would testify at trial. The NOE specified that Dutton, a child sex abuse expert, would testify to "the various aspects of child sexual abuse including victimology, grooming, disclosure issues, interviewing techniques, and credibility of child sex victims." Robins filed a motion in limine on May 13, 2011, to preclude Dutton from testifying at trial. Robins argued that Dutton should not be allowed to testify because the danger of unfair prejudice would substantially outweigh her testimony's probative value. The District Court heard oral arguments on the motion on May 16, 2011, and took the matter under advisement for the time being. The jury was selected and given preliminary instructions later the same day. During trial, the court allowed Dutton to testify but gave the jury a cautionary instruction that her testimony could not be used as substantive evidence or as her opinion that Robins had committed the alleged crimes.

¶7 Dutton testified about the process of victimization, how victims disclose abuse, children's typical reactions to abuse, the most common situations when children make false allegations, and the proper protocol for conducting a forensic interview with a child. Dutton did not discuss the specifics of Robins's case and did not offer an opinion of whether C.G. had been abused.

3

¶8     The jury convicted Robins of all four charges.  On July 14, 2011, however, the District Court dismissed one count of Attempted Sexual Intercourse Without Consent because the State had failed to establish jurisdiction for that charge.  The District Court sentenced Robins to thirty years in the Montana State Prison for each of the three standing convictions, all to run consecutively.  Robins timely appealed his final judgment.

## STANDARD OF REVIEW

¶9     Whether an expert is allowed to testify at trial is an evidentiary ruling.  *Doyle v. Clark*, 2011 MT 117, ¶ 22, 360 Mont. 450, 254 P.3d 570.  We review a district court's evidentiary rulings for an abuse of discretion.  *State v. Hardman*, 2012 MT 70, ¶ 8, 364 Mont. 361, 276 P.3d 839.  A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice.  *Hardman*, ¶ 8.

## DISCUSSION

¶10    Robins argues that he should be given a new trial because Dutton should not have been allowed to testify.  He contends that Dutton's testimony improperly invaded the jury's obligation to assess C.G.'s credibility.

¶11    It is solely the jury's duty to determine the credibility of witnesses.  *State v. Harris*, 247 Mont. 405, 409, 808 P.2d 453, 455 (1991).  Thus, an expert witness generally cannot comment on the credibility of the alleged victim.  *Harris*, 247 Mont. at 409-10, 808 P.2d at 455.  A narrow exception allows an expert to comment directly on a victim's credibility in child sexual abuse cases in limited situations.  *Harris*, 247 Mont. at 410, 808 P.2d at 455.  The exception applies only when the accuser is a young child, *see State v. Hensley*, 250

4

Mont. 478, 482, 821 P.2d 1029, 1032 (1991), testifies at trial, *see State v. J.C.E.*, 235 Mont. 264, 269, 767 P.2d 309, 313 (1988) (overruled in part on other grounds), his or her credibility is brought into question, *see Harris*, 247 Mont. at 410, 808 P.2d at 455-56, and the expert is properly qualified as such in the field of child sexual abuse, *see State v. Scheffelman*, 250 Mont. 334, 342, 820 P.2d 1293, 1298 (1991). Even if the abuse occurred when the accuser was young, the exception does not apply if the accuser is not a young child at the time of the trial. *Hensley*, 250 Mont. at 482, 821 P.2d at 1032 (exception did not apply when the accuser was nearly seventeen at the time of trial even though the abuse allegedly started when she was seven).

¶12 To be clear, this exception allows an expert to directly comment on the victim's credibility. *State v. Scott*, 257 Mont. 454, 465, 850 P.2d 286, 292 (1993); *State v. French*, 233 Mont. 364, 367-68, 760 P.2d 86, 88-89 (1988). In very few other situations, if any, do we permit experts to directly testify that they believe that a witness has told the truth. Expert testimony that only indirectly bears on a child sexual abuse victim's credibility does not have to satisfy the exception's requirements to be admissible. *See State v. Morgan*, 1998 MT 268, 291 Mont. 347, 968 P.2d 1120. The exception is implicated only when the expert directly comments on the victim's credibility.

¶13 Our decision in *Morgan* is particularly instructive in that regard. In *Morgan*, a qualified expert testified about patterns of child sexual abuse and factors to consider in the evaluation of a child's sexual abuse report. The expert did not investigate the facts of the case and did not offer an opinion concerning the victim's credibility or any other specific aspect of the case. *Morgan*, ¶ 26. In holding that the expert's testimony was admissible, we

5

did not apply the exception that permits direct expert testimony on credibility. Rather, we only considered whether the expert's testimony was proper under M. R. Evid. 702.

¶14     As in *Morgan,* we do not consider whether Dutton's testimony was proper pursuant to the exception that allows direct comment on credibility because she did not comment directly on the victim's credibility. Although Robins suggests otherwise, the fact that Dutton's testimony was consistent with the victim's allegations does not mean that Dutton vouched for the victim or commented on her credibility. Like the expert in *Morgan*, Dutton limited her testimony and only testified about general child sexual abuse patterns. She did not review any of the victim's statements before testifying. She did not offer an opinion of whether the victim was credible. She did not offer an opinion about what happened in this case, and specifically did not offer an opinion as to whether the victim was sexually assaulted. Dutton did not vouch for C.G. or otherwise comment on C.G.'s credibility.

¶15     Robins argues that we must nevertheless consider the propriety of Dutton's testimony under the exception because the State indicated in its NOE that Dutton would testify to the credibility of child sex victims, among other things, and because the State relied, in part, on the exception to defeat Robins's motion in limine. The fact that the State indicated that Dutton may testify to the credibility of child sex victims and cited legal authority saying that she could do so does not mean that we must apply law that is not otherwise implicated. We review Dutton's testimony at trial and consider whether that testimony was proper. Because Dutton did not directly comment on the victim's credibility, we only consider whether her testimony was admissible under M. R. Evid. 702 and do not apply the exception discussed above.

6

¶16 Generally, an expert may testify about scientific, technical, or other specialized knowledge if it will help the jury understand the evidence or determine a fact in issue. M. R. Evid. 702. We have consistently upheld the use of experts to explain the complexities of child sexual abuse. *Morgan*, ¶ 29. Child sexual abuse is a topic that many or most jurors have no common experience with. *Scott*, 257 Mont. at 456, 850 P.2d at 292. This is particularly so when the alleged victim and perpetrator are family members. *State v. Geyman*, 224 Mont. 194, 198, 729 P.2d 475, 478 (1986) (citing *Minnesota v. Myers*, 359 N.W.2d 604, 609-10 (1984)). Child sexual abuse victims often respond to the abuse with seemingly puzzling and contradictory behavior. *Scott*, 257 Mont. at 465, 850 P.2d at 292. The expert's testimony educates and enlightens the jury. *Scott*, 257 Mont. at 465, 850 P.2d at 292-93. The jury can then make a more informed decision when it assesses the victim's credibility. *Scott*, 257 Mont. at 465, 850 P.2d at 292-93.

¶17 Dutton's testimony qualifies under M. R. Evid. 702 as educational testimony on a topic outside of most jurors' common experience. Dutton's testimony was intended to help the jury comprehend some of C.G.'s behavior that might have otherwise seemed inconsistent with abuse. For example, Dutton explained that it was not unusual for sexual abuse victims to not report the abuse, especially when the victim has a close relationship with the perpetrator, or for the victim to act inappropriately when discussing the abuse. Dutton also may have helped the jury see Robins's actions as a pattern of abuse. Dutton's testimony did not impinge upon the jury's obligation to ultimately decide C.G.'s credibility; it merely allowed the jurors to make an informed decision.

¶18 Moreover, the District Court alleviated any concern of unfair prejudice by giving the jury a cautionary instruction before Dutton testified. The judge told the jury that it should consider Dutton's testimony only for the limited purpose of deciding whether the victim's acts and words after the alleged crime were consistent with those of other sexually abused children. The court specifically instructed the jury that it could not consider Dutton's testimony as her opinion that the victim was telling the truth. Dutton's testimony presented no danger that Robins would suffer unfair prejudice.

¶19 For the reasons stated above, we affirm Robins's convictions. The District Court acted well within its discretion when it allowed Dutton to testify at trial.

/S/ MIKE McGRATH

We concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS