DA 12-0577

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 318

STATE OF MONTANA,

       Plaintiff and Appellee,

v.

LLOYD EUGENE MEDEROS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DC 11-83
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Joseph P. Howard, P.C., Attorney at Law; Great Falls, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General; Helena, Montana

       Eileen Joyce, Silver Bow County Attorney, Samm Cox, Deputy County
Attorney; Butte, Montana

Submitted on Briefs: August 14, 2013
Decided: October 29, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Lloyd Eugene Mederos (Mederos) appeals his conviction from the Second Judicial District Court, Silver Bow County. We affirm.

¶2     We address the following issue on appeal:

¶3     *Whether Mederos's trial counsel rendered ineffective assistance of counsel.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     A.R. and A.S. were both seven years old at the time that they alleged Mederos sexually assaulted them. A.S. lived with her mother Laura. A.R. lived with her mother, Laura's sister, Kelley. Mederos was married to Kelley, so he also lived with A.R. A.S. and A.R. were close friends and spent lots of time together.

¶5     In 2011, A.S. told Laura that she did not want to go to her Aunt Kelley's apartment because Mederos had been "sexing" her. A.S. also told Laura that Mederos had engaged in sexual contact with A.R. Laura contacted Kelley and the girls' grandfather, Larry. Laura, Kelley, and Larry confronted Mederos. Mederos denied the claims. Laura reported Mederos to the police.

¶6     Forensic investigators interviewed the girls. The girls provided vague and unclear accounts during the forensic interviews. Medical examinations showed some signs of trauma, but ultimately proved inconclusive.

¶7     Mederos denied the charges at trial. The two girls testified at trial. Both girls offered disjointed and, at times, contradictory testimony about what happened. A.R. and A.S. often

2

responded that they did not remember what happened when counsel for the State or Mederos's counsel asked them for more details.

¶8 Laura, Kelley, and Larry all testified at trial about the events of the night that A.S. told Laura that Mederos had been "sexing" her. The State also presented the testimony of other witnesses. These other witnesses included clinical social worker Dawn English (English), pediatrician Dr. Kenneth Graham (Graham), and forensic interviewers Shawna Guay (Guay) and Sue Casey (Casey). English testified about her therapy sessions with A.R. and A.S. She commented that A.S. had made consistent statements during therapy. Graham discussed his medical examination of the girls and what he had reported in his forensic medical reports. Both Guay and Casey testified about their forensic interviews with the girls.

¶9 A jury convicted Mederos of both counts of sexual assault. The District Court sentenced Mederos to concurrent 100 year sentences at Montana State Prison, with 50 years of each sentence suspended. Mederos appeals.

## STANDARD OF REVIEW

¶10 Claims of ineffective assistance of counsel present mixed issues of law and fact that we review de novo. *State v. Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88.

## DISCUSSION

¶11 Mederos argues that his trial counsel rendered ineffective assistance of counsel in two areas. Mederos first contends that his counsel failed to object to numerous incidences of hearsay testimony by various witnesses. He also argues that his counsel improperly stipulated to the admission of multiple items of evidence that contained otherwise

3

inadmissible hearsay statements. Mederos contends that this evidence bolstered A.R.'s and A.S.'s testimony and raises a reasonable probability that the outcome of the proceedings would have been different if this additional, cumulative evidence had not been admitted.

¶12 We evaluate claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *State v. Howard*, 2011 MT 246, ¶ 20, 362 Mont. 196, 265 P.3d 606. A defendant must establish that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Rosling v. State*, 2012 MT 179, ¶ 23, 366 Mont. 50, 285 P.3d 486. A defendant must establish both prongs of the test. *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861. We will not address both prongs if a defendant fails to establish either prong. *Whitlow*, ¶ 11.

¶13 A deficient performance falls "below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. We have recognized " 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Whitlow*, ¶ 15, quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. A petitioner who argues that his counsel's "failure to object rendered counsel ineffective must show that counsel's trial objection would have been proper and that the court likely would have sustained the objection." *Rogers v. State*, 2011 MT 105, ¶ 16, 360 Mont. 334, 253 P.3d 889.

¶14 Mederos argues first that his counsel failed to object to multiple and repeated instances of hearsay testimony. Mederos posits that Laura, Kelley, and Larry offered

4

impermissible hearsay testimony regarding earlier statements made by A.R. and A.S. Mederos also argues that Graham, English, Guay, and Casey improperly testified to the girls' out-of-court statements and identifications of Mederos as the perpetrator. The State argues that Mederos's trial counsel used testimony from these witnesses to cast doubt on the girls' credibility.

¶15 Not all out-of-court statements constitute hearsay. Montana Rule of Evidence 801(d)(1) specifically excludes from the hearsay rule a prior statement by a witness where "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement" under two separate circumstances relevant here. The first circumstance involves a statement that is "inconsistent with the declarant's testimony." M. R. Evid. 801(d)(1)(A). The second circumstance involves a statement that is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of subsequent fabrication, improper influence or motive." M. R. Evid. 801(d)(1)(B).

¶16 Mederos must show that hearsay objections would have been proper and that the trial court would have sustained the objection to support his claims of ineffective assistance. *Rogers*, ¶ 16. A.R. and A.S. both testified at trial and Mederos's counsel cross-examined each regarding their earlier statements. Many of A.R.'s and A.S.'s prior statements likely would qualify as prior inconsistent statements.

¶17 A claimed lapse of memory represents an inconsistency under M. R. Evid. 801(d)(1)(A). *Howard*, ¶ 31, citing *State v. Lawrence*, 285 Mont. 140, 159, 948 P.2d 186,

5

198 (1997). A.R. and A.S. frequently responded that they did not know or could not remember answers to questions during direct and cross-examination. The girls' testimony charitably can be described as vague at times and somewhat unclear. The repeated lapses in memory in the girls' testimony allowed the State to introduce other witnesses to testify about the girls' prior inconsistent statements. *See Howard*, ¶ 31, citing *Lawrence*, 285 Mont. at 159, 948 P.2d at 198.

¶18 Laura's, Kelley's, and Larry's testimony introduced the girls' prior inconsistent statements. A court may admit consistent statements in conjunction with inconsistent statements where the nature of a witness's testimony makes it difficult for the court to separate the consistent from the inconsistent portions of the prior statement. *Howard*, ¶ 31, citing *Lawrence*, 285 Mont. at 160, 948 P.2d at 198. The witnesses admittedly mixed consistent statements with inconsistent ones. The record indicates that to parse the consistent statements from the inconsistent statements likely would have made the witnesses' testimony disjointed and confusing. *See Howard*, ¶ 31, citing *Lawrence*, 285 Mont. at 160, 948 P.2d at 198.

¶19 For example, A.S. testified that she had talked to her mother about Mederos on February 28, 2011. Mederos's counsel asked A.S. on cross-examination when she first had told her mother that Mederos had been molesting her. A.S. responded that she did not remember. A.S.'s disjointed testimony failed to provide a clear picture of what actually happened on February 28, 2011. Laura testified about events that happened the night that A.S. told Laura that Mederos had been "sexing" her. Laura's testimony clarified what she

6

and A.S. had discussed on February 28, 2011, and what A.S. had told her about Mederos. For the District Court to have admitted only parts of Laura's testimony would have led to a piecemeal picture of what had happened that likely would have further confused the jury. Laura's testimony provided a time frame and context for A.S.'s testimony about what happened when she told her mother about Mederos.

¶20 Mederos's counsel may have had strategic reasons for not objecting even if all of Laura's, Kelley's, and Larry's testimony did not fall under M. R. Evid. 801(d)(1)(A). We have held that counsel's use of objections "lies within his or her discretion." *Riggs v. State*, 2011 MT 239, ¶ 53, 362 Mont. 140, 264 P.3d 693. *Riggs* also involved a sexual assault case against minors. Riggs raised an ineffective assistance of counsel claim based on his counsel's failure to object when several witnesses—the victims' mothers, social workers, and law enforcement officers—offered prior consistent statements made by the victims. *Riggs*, ¶ 50.

¶21 Riggs's counsel testified at an evidentiary hearing on Riggs's petition for post-conviction relief that he had not objected to these witnesses' statements because he wanted to point out the numerous inconsistencies in the victims' statements. *Riggs*, ¶ 53. We recognized that different counsel have different trial strategies and that Riggs's counsel's strategy was objectively reasonable. *Riggs*, ¶ 54. As in *Riggs*, Mederos's counsel may have opted not to object to Laura's, Kelley's, and Larry's testimony in order to highlight inconsistencies in the girls' stories. Mederos's counsel had discretion not to object. *Riggs*, ¶ 53.

7

¶22    Mederos next asserts that Graham, the examining pediatrician, improperly testified to A.R.'s out-of-court statements recorded by the forensic interview team. Mederos classifies this testimony by Graham as hearsay within hearsay. Mederos ignores the fact that the parties previously had stipulated to the admission of A.R.'s forensic interview. Graham simply testified to matters previously admitted into evidence through the forensic interviews and forensic medical reports that he had prepared.

¶23    Mederos also argues that Graham offered impermissible hearsay that A.S. "had disclosed digital/vaginal penetration." The parties previously had stipulated to the admission of A.S's forensic medical report created by Graham. Graham's testimony repeated statements that he had made in A.S.'s forensic medical report, including the notion that A.S. "had disclosed digital/vaginal penetration."

¶24    Presentation to a jury of admissible evidence that proves the same facts as tainted evidence usually amounts to harmless error when the tainted evidence qualifies as cumulative of the admissible evidence. *State v. Van Kirk*, 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735. We have characterized as cumulative a witness's testimony regarding out-of-court statements, and, thus, harmless error, as the statements mirrored those made on a 911 tape that the trial court earlier had admitted without objection. *State v. Mizenko*, 2006 MT 11, ¶ 26, 330 Mont. 299, 127 P.3d 458.

¶25    Graham's testimony repeated statements made in A.R.'s forensic interview and A.S.'s forensic medical report. Both documents earlier had been admitted without objection. Graham's testimony would qualify as cumulative of the previously admitted documents.

*Van Kirk*, ¶ 47. The District Court's admission of Graham's statements, regardless whether Mederos's counsel objected, would be subject to harmless error analysis. *Van Kirk*, ¶ 47. "An ineffective assistance of counsel claim cannot succeed when predicated on counsel's failure to take an action which, under the circumstances, would likely not have changed the outcome of the proceeding." *State v. Haldane*, 2013 MT 32, ¶ 37, 368 Mont. 396, 300 P.3d 657.

¶26 Mederos contends that social worker English repeated hearsay statements in her testimony when the State asked English whether A.S. had been consistent about her allegations and the identity of her abuser. English testified that A.S. had been "completely consistent." English's testimony regarding A.S.'s prior consistent statement likely would not qualify as hearsay under M. R. Evid. 801(c). English did not restate A.S.'s prior statements in court to prove the "truth of the matter asserted" in the statements. M. R. Evid. 801(c). Rather, English testified in response to Mederos's attacks on A.S.'s veracity as a witness. *See State v. Robins*, 2013 MT 71, ¶ 11, 369 Mont. 291, 297 P.3d 1213 (discussing situations in which it would be appropriate for an expert witness to testify about a child sexual abuse victim's credibility). English contended that A.S. consistently had alleged that Mederos had engaged in sexual conduct with her. Mederos's counsel legitimately could have believed that he did not have grounds to object to the statement as hearsay. *See State v. Aker*, 2013 MT 253, ¶ 36, 371 Mont. 491, ___P.3d ___.

¶27 Mederos also argues that forensic interviewers Guay and Casey presented hearsay statements. Guay and Casey testified regarding statements made by A.R. and A.S. during

9

forensic interviews. The parties previously had stipulated to the admission of the forensic interviews. The statements would qualify as cumulative of the previously admitted forensic interviews. *Mizenko*, ¶ 26; *Van Kirk*, ¶ 47. Cumulative evidence will be deemed harmless " 'unless the record shows that the error was prejudicial.' " *State v. Hansen*, 1999 MT 253, ¶ 86, 296 Mont. 282, 989 P.2d 338, quoting *State v. Carter*, 285 Mont. 449, 459, 948 P.2d 1173, 1178-79 (1997); § 46-20-701(1), MCA. Unfairly prejudicial evidence "arouses the jury's hostility or sympathy for one side without regard to its probative value." *State v. Ugalde*, 2013 MT 308, ¶ 47, 372 Mont. 234, ___ P.3d ___.

¶28 Mederos's counsel could exercise discretion regarding when to object. *Riggs*, ¶ 53. He may have chosen not to object for a variety of reasons, even when a witness proffered hearsay testimony. Testimony from Laura, Larry, Kelley, Graham, Guay, and Casey contradicted the girls' vague and erratic testimony throughout trial. Mederos's counsel successfully brought out these contradictions through cross-examination. Mederos's counsel may have anticipated that these witnesses' testimony would create a tangled story that ultimately would undermine the girls' credibility.

¶29 Mederos next challenges the District Court's admission of various items of evidence in the record that he argues should have been excluded as hearsay. A statement can be oral or written for purposes of hearsay. M. R. Evid. 801(a). Mederos's counsel stipulated to the admission of all the State's exhibits before trial. This stipulation included four main items: (1) video recordings of the girls' forensic interviews, (2) drawings and pictures created

10

during the girls' forensic interviews, (3) reports from the girls' forensic medical exams, and (4) A.S.'s emergency room medical report.

¶30 The girls frequently mentioned that they could not remember certain events throughout their testimony. As discussed previously, lapsed memories constitute inconsistent statements under M. R. Evid. 801(d)(1)(A). *Howard*, ¶ 31, citing *Lawrence*, 285 Mont. at 159, 948 P.2d at 198. The girls also made statements at trial directly inconsistent with statements they had offered during the forensic interviews. For example, A.S. told Casey during her forensic interview that Mederos had twice put his finger in her "pee-pee." A.S. testified in trial, though, that Mederos put his finger in her "pee-pee" three times and that she "remember[ed] telling everyone that…he put his finger in [her] pee-pee three times."

¶31 Mederos's counsel cross-examined A.R. and A.S. and the other witnesses presented by the State regarding these inconsistent statements. Mederos's counsel highlighted the fact that A.S. testified differently at trial than she had testified during the forensic interviews. These inconsistencies may have prompted Mederos's counsel to stipulate to the admission of the forensic reports for strategic reasons to help undermine the girls' testimony through cross-examination. Counsel's actions, taken in this light, do not appear to fall "below an objective standard of reasonableness measured under prevailing professional norms." *Whitlow,* ¶ 20.

¶32 The State introduced pictures and drawings from the girls' forensic interviews. A.R. labeled body parts on a picture of the human body during her forensic interview. The State

11

used the picture to establish how A.R. identified different body parts. The State did not use the picture with A.R's annotations to establish that the picture presented a true and accurate representation of the human body. The State instead introduced the picture to demonstrate to, and clarify for, the jury the names that A.R. used for different body parts.

¶33 A.S. drew a picture during her forensic interview. A.S.'s drawing depicted events that A.S. claimed had happened in the bedroom with Mederos. A.S. denied at trial having made the drawing. The admission of the drawing, coupled with A.S.'s denial of having made the drawing, undermined A.S.'s credibility as a witness. The decision by Mederos's counsel to stipulate to admission of the drawing had the potential to help Mederos's case as evidenced by A.S.'s denial that she had made the drawing.

¶34 Graham created separate forensic medical reports for A.S. and A.R. Both medical reports contain fertile ground for cross-examination. A.S.'s medical report illuminates inconsistencies in her claims. A.S. states in the report that Mederos had touched her in January. A.S.'s mother testified at trial, however, that A.S. had not been to Mederos's house in January. A.R.'s medical report indicates that she previously had been to the Child Evaluation Center based on allegations of possible sexual abuse by a different family member. Both reports provide inconclusive physical evidence of sexual abuse.

¶35 The State also introduced a medical report from A.S.'s emergency room visit after Laura had reported the case to the police. A.S. reported the presence of "white stuff" in her vaginal area after Mederos had molested her. One might deduce that the "white stuff" had been semen. The emergency room medical report offers another possible explanation,

however, for "white stuff" found in A.S.'s vaginal area. The report speculates that A.S. might have had a yeast infection. Mederos's counsel reasonably could have anticipated that the admission of these medical reports would benefit his client. This interpretation would position Mederos's counsel's actions within the standard of reasonable professional assistance. *See Whitlow*, ¶ 14, citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2065.

¶36　We ask "why" Mederos's counsel did or did not perform as alleged in evaluating Mederos's counsel's performance throughout trial. *Aker*, ¶ 34, citing *Howard*, ¶ 21. We look to the record to answer this question. *Aker*, ¶ 34, citing *Howard*, ¶ 21. We cannot address a claim of ineffective assistance of counsel on direct appeal if the defendant bases his claim on matters outside of the record. *Aker*, ¶ 34, citing *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. A petition for post-conviction relief would allow Mederos to develop a record to explain "why" his counsel acted as he did at trial. *Aker,* ¶ 34. A reviewing court then could determine " 'whether counsel's performance was ineffective or merely a tactical decision.' " *Aker*, ¶ 34, quoting *Kougl*, ¶ 14.

¶37　The evidence as a whole illuminates inconsistencies in the girls' story and undermines their veracity as witnesses. Mederos's counsel addressed these inconsistencies in his closing statements. Mederos's counsel also may have perceived that all of the statements and evidence contested by Mederos did not actually violate hearsay rules. The trial record does not include an explanation for Mederos's counsel's trial strategy. We decline to speculate on the claimed error on direct appeal as Mederos's allegations of ineffective counsel implicate questions of trial strategy that exceed the scope of the record. *See Aker*, ¶ 37, citing *State v.*

13

*Dyfort*, 2000 MT 338, ¶ 11, 303 Mont. 153, 15 P.3d 464. A petition for post-conviction relief represents the appropriate route for Mederos to develop a record to support his claim of ineffective assistance of counsel. *Aker*, ¶ 34.

¶38 Affirmed.

/S/ BRIAN MORRIS

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE