FILED

03/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0449

DA 23-0449

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 50N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

AMANDA SHARYCE WALTON,

      Defendant and Appellant.


APPEAL FROM:   District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DC- 2022-024
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

      Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

      Brett Irigoin, Dawson County Attorney, Cody Lensing, Deputy County Attorney, Glendive, Montana


Submitted on Briefs:  January 14, 2026

Decided:  March 10, 2026

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Appellant Amanda Sharyce Walton appeals the judgment of the Montana Seventh Judicial District Court following her conviction on the following charges:

> (1) Sexual Abuse of Children Under 12 Years of Age by Accountability in violation of §§ 45-5-625, 45-2-301, MCA, alleging that Walton abetted her husband, Monte Walton, Sr.'s (Monte) possession of child pornography on or before July 2022;
>
> (2) Incest (Victim Under 12 Years of Age) by Accountability in violation of §§ 45-5-507, 45-2-301, MCA, alleging that Walton assisted Monte in his sexual abuse of her son, R.H., between January 2008 and January 2010;
>
> (3) Incest (Victim Under 16 Years of Age and Offender 3 or More Years Older) in violation of § 45-5-507, MCA, alleging that Walton sexually abused her daughter, E.W., between January 2015 and January 2017; and
>
> (4) Endangering the Welfare of Children in violation of § 45-5-622, MCA, alleging that Walton exposed E.W., R.H., and her two other children to methamphetamine or methamphetamine paraphernalia.

¶3      Walton asserts the District Court erred by admitting evidence of prior bad acts and testimony from the State's blind expert witness. We affirm.

¶4      Within a week before trial, the State moved in limine to admit testimony from E.W. and R.H. about prior instances of sexual abuse they disclosed during forensic interviews conducted in July 2022. The State asserted that R.H. disclosed that Walton sexually abused him in New Mexico when Monte was not present. The State asserted that E.W. disclosed

2

that Walton and Monte took turns placing drugs in her drink before abusing her and that Walton would masturbate when Monte put drugs in the drink. The State reasoned the testimony was admissible to demonstrate knowledge, voluntary participation in the abuse, and a lack of accident because Walton made statements to law enforcement indicating that she intended to allege that Monte forced her to participate in the acts of sexual abuse through domestic violence and involuntary intoxication. The State also filed a notice that it may call Wendy Dutton as a blind expert witness.

¶5      At the March 9, 2023 pretrial hearing, the District Court addressed the admissibility of Dutton's, E.W.'s, and R.H.'s testimony. Walton conceded "the State [was] right" about her theory of the case but contended that her prior acts were inadmissible because they were too remote in time. The State reiterated the argument it had asserted in its motion in limine. The State explained that it intended to primarily ask Dutton about why children may delay disclosing that they have been sexually abused and the effects of sexual abuse on children.

¶6      Walton filed a motion in limine the day after the pretrial hearing, in which she argued that Dutton's testimony amounted to vouching for E.W.'s and R.H.'s credibility as witnesses and that her testimony would be unhelpful to the jury's deliberations. Walton argued that E.W.'s and R.H.'s testimony violated M. R. Evid. 404(b) and was unfairly prejudicial under M. R. Evid. 403.

¶7      On the first day of trial before the parties gave their opening statements, the District Court ruled that E.W.'s, R.H.'s, and Dutton's testimony was admissible. The District Court

3

permitted E.W. and R.H. to offer limited testimony that indicated "[Walton] would engage, willing[ly], in the alleged abuse." The District Court reasoned that Walton's prior acts could show "a lack of mistake and a lack of accident, a plan" relevant to whether she voluntarily sexually abused E.W. and voluntarily assisted Monte sexually abuse R.H. The District Court allowed Dutton to testify about the complexities of child sexual abuse based on her training and experience and directed Walton to make any further objection during Dutton's testimony.

¶8    E.W. testified that Monte began sexually abusing her when she was 5 or 6 years old and that Walton began to participate in the abuse when she was 6 or 7 years old. E.W. stated the sexual abuse occurred in Montana and other states where the family had lived. E.W. testified that Monte and Walton placed drugs in her drink before they abused her and that Walton would give her the drink and explain the substance was "sugar" to make the drink sweeter. R.H. testified that he was sexually abused by Monte in Montana when he was between 9 and 11 years old. R.H. explained that Walton held his hand and told him it was going to be okay while Monte sexually abused him. R.H. testified that Walton sexually abused him when he was 7 or 8 years old without Monte present when the family lived in New Mexico. Walton testified to incidents that indicated her relationship with Monte was abusive. Walton testified that Monte would drug her in order to force her to do what he wanted her to do. Walton testified that she experienced memory loss when she was involved in the sexual abuse of E.W. and R.H. to suggest that she had been involuntarily drugged. Walton did not request any jury instructions that would have instructed the jury

4

to limit their consideration of her prior acts for non-propensity purposes and no such instruction was given. The jury found Walton guilty on all four counts.

¶9      We generally review a district court's evidentiary rulings for an abuse of discretion, but we review rulings based on an interpretation or application of law de novo. *State v. McGhee*, 2021 MT 193, ¶ 10, 405 Mont. 121, 492 P.3d 518 (citations omitted). "Generally, [we] will not address issues raised for the first time on appeal." *State v. Sinz*, 2021 MT 163, ¶ 19, 404 Mont. 498, 490 P.3d 97 (citation omitted). We may invoke plain error review to address issues raised for the first time on appeal when the party "demonstrate[s] that the claimed error implicates a fundamental right" and "firmly convince[s] this Court that a failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142 (citation omitted). We apply the plain error doctrine sparingly on a case-by-case basis considering the totality of the circumstances. *Akers*, ¶ 13 (citation omitted).

¶10      In *State v. Dist. Ct. of the Eighteenth Jud. Dist.*, 2010 MT 263, 358 Mont. 325, 246 P.3d 415 (hereinafter *Salvagni*), we established the pretrial procedure that governs the admissibility of Rule 404(b) evidence. *State v. Crider*, 2014 MT 139, ¶ 21, 375 Mont. 187, 328 P.3d 612 (citing *Salvagni*, ¶ 49). First, the prosecution must disclose evidence of prior bad acts to the defendant. *Crider*, ¶ 21 (citation omitted). Second, the defendant may move to exclude the evidence and the State must respond to the defendant's objection and

5

demonstrate the evidence's admissibility. *Crider*, ¶ 21 (citation omitted). Lastly, "the court should conduct a hearing and issue a written decision with appropriate findings of fact and conclusions of law." *Crider*, ¶ 21 (citation omitted). The purpose of this pretrial procedure is to ensure that defendants receive notice of Rule 404(b) evidence and to provide the defendant with an "adequate opportunity to prepare for and make objections to it prior to trial." *See Salvagni*, ¶¶ 48, 53.

¶11 Walton argues that the District Court abused its discretion by failing to comply with the procedures set forth in *Salvagni*. Although Walton lodged no objection to the procedures the District Court followed in making its evidentiary rulings, she argues we should exercise plain error review because the District Court's failure to follow the proper pretrial procedure compromised the integrity of the judicial process and burdened her due process rights.

¶12 The State notified Walton of E.W.'s and R.H.'s statements by describing Walton's prior bad acts in the affidavit supporting the Information as well as in subsequent discovery disclosures. *Salvagni*, ¶¶ 42, 48. Even though Walton had lodged no pretrial objection to these statements, the State proactively filed a pretrial motion in limine specifically identifying the statements it intended to introduce and explaining the legal basis for their admissibility under Rule 404(b) and Rule 403. Walton was then afforded the opportunity to respond to the State's arguments both in her response to the State's motion and in her own motion in limine. The District Court ruled on the pending motions before the parties presented their opening statements, explaining on the record why it deemed E.W.'s and

6

R.H.'s testimony admissible. Assuming for the sake of argument that the District Court did not precisely comply with the procedures laid out in *Salvagni*, Walton has failed to establish how the District Court's pretrial procedure violated her due process rights, leaves unsettled the fundamental fairness of the trial, or compromised the integrity of the judicial process.

¶13 Walton also asserts the District Court erred by failing to sua sponte give jury instructions that limited the jury's consideration of Walton's prior bad acts. Walton contends that *State v. Stroud*, 210 Mont. 58, 683 P.2d 459 (1984), requires trial courts to sua sponte give limiting instructions regarding evidence of prior bad acts. Walton asserts the District Court's failure to comply with *Stroud* necessitates plain error review.

¶14 Walton's reliance on *Stroud* is misplaced. Although *Stroud* encourages trial courts to give jury instructions sua sponte, it does not impose a mandatory duty that necessarily implicates plain error review. *Stroud*, 210 Mont. at 73, 683 P.2d at 467 ("We remind trial judges that admonition of the jury still *should be done sua sponte*." (emphasis added)). The potential prejudice created by improperly instructing the jury on Rule 404(b) evidence is diminished when the evidence is admissible for non-propensity purposes and its unfair prejudice does not outweigh its probative value. *McGhee*, ¶ 31 (citation omitted).

¶15 Walton has not met her high burden to establish that the District Court's failure to sua sponte limit the jury's consideration of her prior bad acts leaves unsettled the question of whether she received a fair trial. Walton knew that her theory of the case put her prior bad acts at issue as her counsel conceded multiple times that the evidence would "probably

get into prior bad acts anyway." Walton's defense attempted to persuade the jury that she lacked the requisite mental state to be found guilty because she was involuntarily intoxicated when she abused E.W. and assisted Monte's abuse of R.H. The testimony of E.W. and R.H. was probative for the non-propensity purpose of rebutting the impression that Walton was involuntarily intoxicated when the abuse occurred because Monte drugged her. *State v. Clemans*, 2018 MT 187, ¶ 15, 392 Mont. 214, 422 P.3d 1210. The District Court sought to reduce any unfair prejudice by only allowing E.W. and R.H. to give "limited testimony [about Walton's prior bad acts] to explain the absence of mistake." *McGhee*, ¶ 28.

¶16    Walton's reliance on *State v. Pelletier*, 2020 MT 249, 401 Mont. 454, 473 P.3d 991, is similarly misplaced. In *Pelletier* we held the district court erred by allowing the State to introduce an unsubstantiated fifteen-year-old allegation that the defendant had committed sexual intercourse without consent when he was fifteen years old in response to his testimony that he was not the kind of guy who would ever do that to a female. *Pelletier*, ¶¶ 9, 25, 28. We held that "the unsubstantiated 2003 allegation had no probative value for the purpose offered and, on the other hand, posed a high risk of unfair prejudice under the circumstances of this case." *Pelletier*, ¶ 28. In this case, Walton admitted the prior sexual abuse of E.W. and R.H. occurred and her prior acts are probative because her theory of the case specifically put the voluntariness of her participation in the abuse at issue.

¶17    Walton chose to proceed upon the theory that she lacked the requisite mental state to be held criminally responsible for her conduct, and the District Court instructed the jury

accordingly. The State emphasized Walton's communications with Monte that indicated she willingly participated in the sexual abuse during its closing statement while briefly mentioning E.W.'s and R.H.'s testimony. Under the totality of the circumstances, the District Court's failure to provide limiting jury instructions did not leave unsettled questions regarding the fairness of the trial.

¶18 Walton also challenges the admissibility of Dutton's testimony. Walton argues that Dutton's testimony was unhelpful to the jury because Dutton could not explain why E.W. and R.H. delayed reporting the abuse they experienced given that Dutton lacked personal knowledge of the facts specific to this case. Walton also argues that Dutton's testimony constituted vouching for E.W.'s and R.H.'s testimony.

¶19 "We have consistently upheld the use of experts to explain the complexities of child sexual abuse" because it educates jurors on a topic—the sexual abuse of children—that "many or most jurors have no common experience with." *State v. Robins*, 2013 MT 71, ¶ 16, 369 Mont. 291, 297 P.3d 1213 (citations omitted); *State v. Morgan*, 1998 MT 268, ¶¶ 26-31, 291 Mont. 347, 968 P.2d 1120. The expert testimony helps the jury make an informed decision when assessing the victim's credibility as children who experience sexual abuse may exhibit "puzzling and contradictory behavior." *Robins*, ¶ 16. Expert witnesses generally cannot directly comment on the credibility of a particular alleged victim. *State v. Byrne*, 2021 MT 238, ¶ 26, 405 Mont. 352, 495 P.3d 440 (citations omitted).

¶20 As the State points out in its brief, Walton simultaneously claims that Dutton vouched for the credibility of E.W. and R.H. while also asserting that Dutton's testimony should have been excluded because it was not specific to the facts of this case. Walton's argument fails to recognize the specific purpose of a blind expert witness. Expert testimony may still be relevant and helpful without the expert testifying to facts specific to the case. Dutton explained the dynamics that influence when sexual abuse of children is likely to occur and the behavior that children may exhibit when they have been sexually abused, including delayed disclosure. Dutton's testimony helped the jury in this case by educating them about the complexities of child sexual abuse. *Robins*, ¶ 17; *Morgan*, ¶¶ 29-31. Dutton's testimony proved relevant because it helped the jury make an informed decision on E.W.'s and R.H.'s credibility. *Robins*, ¶ 17; *State v. Wienke*, 2022 MT 116, ¶¶ 23-24, 409 Mont. 52, 511 P.3d 990. Dutton did not vouch for E.W.'s and R.H.'s credibility because she limited her testimony to general information about child sexual abuse. *See Robins*, ¶ 17. The District Court did not abuse its discretion by admitting Dutton's testimony.

¶21 For the first time on appeal, Walton argues the District Court should have excluded Dutton's testimony because the State failed to prove that Dutton based her testimony on reliable research pursuant to the *Daubert* factors. Walton appears to argue that plain error review is warranted because the State's failure to satisfy the *Daubert* factors implicates her due process rights; but Walton offers no substantive argument as to how the alleged error resulted in a manifest miscarriage of justice, may leave unsettled the question of the

10

fundamental fairness of the trial, or may compromise the integrity of the judicial process. "Mere assertion that an asserted error implicates a constitutional right or that a manifest miscarriage of justice will result absent review is insufficient—the appellant must affirmatively demonstrate the criteria for plain error review." *State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72 (citation omitted). Walton's undeveloped argument does not affirmatively demonstrate the criteria for plain error review.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's Judgment is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE

11