**Dana Drew HAWKINS, Petitioner,**

v.

**Robert HANNIGAN, et al., Respondents.**

**No. 94–3355–DES.**

United States District Court, D. Kansas.

Sept. 30, 1997.

---

David J. Gottlieb, Kay Huff, University of Kansas School of Law, Lawrence, KS, for Petitioner.

Melanie S. Pfeifer, Kansas Bureau of Investigation, Topeka, KS, Kevin C. Fletcher, U.S. Attys. Office, Sioux City, IA, for Respondents.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

Petitioner is serving a sentence of 15 years to life for his convictions of aggravated battery, rape and aggravated sodomy of a 92 year old woman in Neodesha, Kansas. Having examined the record, the court finds no evidentiary hearing is required, and denies the application for habeas corpus relief.

### FACTUAL BACKGROUND

The facts, viewed in the light most favorable to the prosecution, present the following scenario.

In the early morning of March 26, 1983, a 92 year old woman in Neodesha, Kansas, was beaten, sodomized and raped in her home. Due to her age and physical limitations, the victim's description of her attacker was not very specific. In investigating the crime, the Neodesha police brought in approximately 150 individuals, including plaintiff, to be photographed on March 27. Two days later, the police questioned petitioner after a witness identified petitioner as being in the vicinity of the victim's home on the night of the crime. Petitioner returned to the police station the same day to give a taped interview after petitioner's sister-in-law notified the police that petitioner resembled the composite drawing of the suspect being sought. In that interview, petitioner stated that his companion, Robert Daugherty, had assaulted the victim while petitioner remained outside the residence. Petitioner returned to the police

station the next day to give the police a written statement.

On the morning of March 31, 1983, the police transported petitioner to the Chanute Police Department in neighboring Allen County, Kansas, for a physiological stress test. During audiotaped questioning following that test, petitioner made statements that implicated his involvement in the offense. When petitioner questioned whether he needed counsel, the police chief transported petitioner back to the county prosecutor's office in Neodesha and placed petitioner under arrest. After processing through the police station, petitioner submitted to further questioning which began with a playback of petitioner's audiotaped statement in Chanute. The subsequent questioning was both audio and videotaped. One of these videotaped sessions was later played to the jury during petitioner's trial.

On April 1, the victim identified petitioner from photo array presented by the Neodesha police chief.

The district court appointed Steven Rogers as petitioner's defense counsel. Prior to trial, a hearing was held on petitioner's motion to suppress the videotaped statement petitioner made in Neodesha on March 31, 1983, following petitioner's arrest. The state court denied the motion, finding the statement was not coerced or obtained in violation of petitioner's right to counsel.

On the day of petitioner's trial, the parties submitted a signed stipulation "that either party may resort to hearsay evidence pertaining to any description or identification given by the victim Hazel Burton. Such hearsay description or identification may be submitted to the jury by audio tape statements taken from the victim Hazel Burton, photos, transcription of tapes, and by eliciting hearsay testimony from Chief Wes Sade of the Neodesha Police Department."[1]

1. The Stipulation and Agreement, signed by petitioner, petitioner's defense counsel, and the state prosecutor, further stated that:

"This stipulation and agreement is entered into with full knowledge by all parties and with the understanding that the victim, Mrs. Hazel Burton, is 92 years of age, in seriously poor health and that her appearance in court could prove extremely hazardous to her life.

This stipulation and agreement is further requested by both parties in that each feels and recognizes a degree of value in those descriptions or identifications relevant to their individual side of the case."

The victim did not testify at trial. Her taped statements were admitted, as was the testimony of the police chief regarding the victim's photo identification of petitioner.

The district court also admitted, over defense counsel's objection, the transcript of petitioner's testimony during the preliminary hearing of Robert Daugherty, the alleged accomplice in the crime. Petitioner's testimony at that preliminary hearing was pursuant to a plea agreement under which the State agreed to drop all but the rape charge against petitioner in exchange for petitioner's testimony against Daugherty. That plea agreement was later withdrawn when petitioner failed to testify according to information he had provided the police regarding Daugherty's involvement in the crime. The State then dropped its prosecution of Daugherty.

Petitioner's defense at trial rested on alibi testimony of seven witnesses who stated petitioner was with them when the crime occurred, and the suggestion that Daugherty fit the physical evidence and description given by the victim. Pursuant to defense counsel's advice, petitioner did not testify in his own defense.

Petitioner presents a strikingly variant factual account in the memorandum filed in his state collateral proceeding. Significantly, petitioner claims police officers ignored his repeated requests for counsel during their interrogation of petitioner on March 31, 1983. Petitioner also argues he was held in police custody the night of March 30, and was subjected daylong questioning in Chanute on March 31st without breaks or food.

The state trial court, recognizing the factual dispute as to whether petitioner requested counsel or only questioned the need for counsel, found in favor of the police officer's testimony. The state trial court also found petitioner's factual account of his questioning on March 31st was clearly confused. In rendering his decision, the state court judge expressly referenced his review of the trial testimony, his review of the transcript from the hearing to suppress petitioner's statements, and his memory of petitioner's videotaped confession that was played to the jury.

## EXHAUSTION OF REMEDIES

The Kansas Supreme Court affirmed petitioner's conviction in his direct appeal. In an unpublished decision, the state appellate court found that petitioner and his attorney gave written consent to the victim's hearsay identification evidence to be used at trial, that testimony about the eyewitness identification was invited error, that sufficient competent evidence supported the conviction, and that the jury's verdict was not swayed by passion or prejudice.

Six years later, petitioner again challenged his conviction by filing a motion for post-conviction relief under K.S.A. 60–1507, and appeals therefrom. Petitioner raised five constitutional errors in his collateral challenge: (1) the police photography and questioning of petitioner prior to March 31, 1983, constituted an arrest without probable cause, requiring the suppression of all evidence thereby obtained; (2) the police unlawfully continued questioning petitioner after he asserted his right to counsel; (3) the duration and manner of the police questioning of petitioner, coupled with petitioner's vulnerability, constituted the extraction of an involuntary confession; (4) petitioner made no knowing and voluntary waiver of his right to confront the victim at trial; (5) petitioner's testimony in Daugherty's hearing should have been suppressed; and (6) petitioner suffered prejudice due to the ineffective assistance of counsel. The state court denied relief, and petitioner appealed on issues (2), (4), (5) and (6).

■ The Kansas Court of Appeals recognized it had no jurisdiction to consider specific allegations of error not raised in petitioner's direct appeal unless petitioner demonstrated that the failure to raise such claims was excused by an exceptional circumstance, such as the ineffectiveness of counsel alleged by petitioner in this case. Although the Kansas Court of Appeals examined the merits of petitioner's first three claims, it ultimately found no ineffective assistance of counsel excused petitioner's failure to raise these errors in petitioner's direct appeal. Because the state appellate courts denied relief notwithstanding its finding of merit in two of petitioner's

claims, the court treats the state court decision as a clear and express statement that the state procedural bar serves as the basis for its judgment. *Harris v. Reed,* 489 U.S. 255, 267, 109 S.Ct. 1038, 1045–46, 103 L.Ed.2d 308 (1989) (procedural default bars review on federal habeas corpus when state court clearly and expressly bases its judgment on state procedural bar). The state appellate decision, thus establishes petitioner's procedural default of these three claims. *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991).

In the petition before this court, petitioner raises two claims under the Sixth and Fourteenth Amendments. First, he claims he was denied his right to effective assistance of counsel. Second, he claims he was denied his right to confront and cross-examine the victim during his trial.

## STANDARDS

A district court can entertain an application for a writ of habeas corpus only on the ground that the applicant is in custody in violation of the Constitution or law or treaties of the United States. 28 U.S.C. § 2254(a). Exhaustion of state court remedies on all claims presented for habeas corpus review is required. 28 U.S.C. § 2254(b). Because this action was pending at the time the habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act, those amendments do not apply. *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## EFFECTIVENESS OF COUNSEL

The Sixth Amendment provides that an accused has the right to assistance of counsel in a criminal prosecution. This right to assistance of counsel includes the right to effective assistance of counsel at trial, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984), and on direct appeal, *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). "The essence of a claim of ineffective-assistance is that counsel's unprofessional errors so upset the adversarial balance

between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986). To prevail on a claim of ineffective assistance of counsel, petitioner is required to show both that his "counsel's representation fell below an objective standard of reasonableness ... considering all the circumstances," and that counsel's deficient performance resulted in prejudice to the defense. *Id.* at 687–88, 104 S.Ct. at 2064–65. The same two-prong standard applies to claims of ineffective assistance of appellate counsel. *U.S. v. Cook,* 45 F.3d 388, 392 (10th Cir.1995).

 Courts are to be highly deferential in reviewing counsel's performance, and every effort should be made to "eliminate the distorting effects of hindsight so that the challenged conduct is evaluated from counsel's perspective at the time the events took place." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. There is a "strong presumption" that counsel has acted reasonably and represented his client effectively. *Davis v. Executive Director of Dept. of Corrections,* 100 F.3d 750, 759 (10th Cir.1996). Petitioner bears the burden of proving both deficient performance and prejudice. Id. A claim of ineffective counsel is a mixed question of fact and law, which federal habeas court reviews de novo. *Williamson v. Ward,* 110 F.3d 1508 (10th Cir.1997) However, state court findings of fact made in the course of deciding such a claim are entitled to deference, and are presumed to be correct. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

In support of his claim of ineffective assistance of counsel, petitioner identifies four specific flaws in the representation of his trial and appellate counsel.[2]

### Trial Errors

First, petitioner claims defense counsel was ineffective in having petitioner sign the stipulation that allowed the admission of hearsay evidence of the victim's identification of petitioner as her assailant. Petitioner

---

**2.** Petitioner's defense counsel also represented petitioner in the direct appeal from petitioner's conviction.

claims the stipulation violated his right to confront this witness.

The Kansas Supreme Court found petitioner's signed stipulation, that was read and reviewed by the trial court in petitioner's presence, constituted petitioner's knowing written consent to the introduction of this hearsay evidence.

In his state collateral challenge, petitioner presented the issue in the context of an explicit constitutional claim that the stipulated admission of the victim's hearsay evidence violated his right of confrontation because the record did not reflect that he signed the stipulation with full knowledge that he was waiving this important constitutional right. Without addressing the Kansas Supreme Court's decision regarding the validity of the waiver, the Kansas Court of Appeals agreed with petitioner's constitutional claim. The Kansas Court of Appeals, however, found no ineffective assistance of counsel, and thereby no excuse for petitioner's failure to raise this constitutional claim in his direct appeal.

Petitioner points to the state appellate court's misquotation of the prosecutor rather than defense counsel as that court's support for its finding that the stipulation reflected trial strategy by the defense. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (defendant must overcome presumption that challenged action might be sound trial strategy under the circumstances). However, this court's de novo review of the record leads the court to the same finding.

■ The stipulated agreement clearly reflects a strategic choice to not have the frail and elderly victim testify before the jury. The audiotaped testimony of the victim that was played to the jury reflected the victim's admitted limitations in the her memory, eyesight, and hearing, and defense counsel was able to highlight inconsistencies between the victim's description of her assailant and her identification of petitioner. The fact that defense counsel appears to be surprised at the scope of the clear terms of the stipulation points to the possibility that counsel mistakenly assessed the risk in pursuing the strategy of keeping the victim off the stand. Every mistake by defense counsel, however, does not constitute constitu-

tionally deficient counsel. Trial counsel's decision is not to be measured by hindsight nor lack of success. *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir.1994). Counsel is constitutionally ineffective only if the decision is so unreasonable that it bears no relationship to a possible defense strategy. *Hatch v. State of Okl.*, 58 F.3d 1447, 1459 (10th Cir.1995). The court is persuaded that the stipulation at issue relates to counsel's decision to not force the victim to take the stand, and that the decision was reasonable enough to reflect sound trial strategy.

■ Even if the court assumes petitioner's right to confrontation was violated by the stipulation, the evidence presented to the jury was sufficient to prevent petitioner from being able to satisfy the prejudice prong under *Strickland*.

In addition to the victim's identification of petitioner and her description of her attacker, the evidence supporting petitioner's conviction included petitioner's videotaped confession in Neodesha after he was arrested, petitioner's audiotaped confession in Chanute wherein petitioner admitted that he was in the victim's house, that he hit the victim, but that he did not know if he raped her. There also was petitioner's voluntary statement to the police in Neodesha on March 30, as well as petitioner's testimony in Daugherty's preliminary hearing. Additionally, there was the hearsay testimony of a witness placing petitioner near the victim's home at the time of the crime, and physical evidence that the victim was raped and that head and pubic hairs in the victim's bedding matched characteristics of petitioner's head and pubic hair.

Next, petitioner claims defense counsel did not adequately represent petitioner during trial when counsel elicited testimony from a witness that placed petitioner near the scene of the crime. In cross examining the police chief, defense counsel questioned why petitioner had been brought in for additional questioning, and the police chief responded that a witness had identified petitioner as being in the area. The state courts found the response did not constitute inadmissible hearsay because the witness was available to testify, although not called.

■ In light of the fact that the State's examination had already established that an eyewitness had identified petitioner to the police, defense counsel's question served, at most, to emphasize the evidence and to identify the name of the eyewitness. This de minimus error, thereby, satisfies neither *Strickland* inquiry.

### Appellate Errors

■ Petitioner alleges his appellate counsel was ineffective in failing to raise two constitutionally significant issues in petitioner's direct appeal. The failure to raise an issue on appeal does not constitute ineffective assistance of counsel if that issue has no merit. *Cook*, 45 F.3d at 392–93. However, appellate counsel is deficient if a "dead-bang" winner claim is omitted in a direct appeal, where the issue was both obvious from the trial record and one which would have resulted in a reversal on appeal. *Id.* at 395.

Petitioner first claims defense counsel was ineffective in not appealing the admission of a videotaped confession by petitioner during questioning at the Neodesha county attorney's office following petitioner's request for counsel. Petitioner indicates the videotape presents petitioner's account of his rape and sodomy of the victim. Petitioner claims the admission of this confession violated his Fifth Amendment right to counsel during questioning.

In his state collateral challenge, the Kansas Court of Appeals reviewed the merit of petitioner's claim and found this evidence was elicited in violation of petitioner's right to counsel and thus should have been suppressed. The state appellate court further found, however, that defense counsel's failure to present the issue on direct appeal did not constitute ineffective assistance of counsel because petitioner could not satisfy the prejudice prong of the *Strickland* inquiry.

The state court record contains possible contrary factual findings regarding petitioner's request for counsel. The state court judge in the suppression hearing held prior to petitioner's trial appears to accept petitioner's uncontroverted factual assertion that petitioner requested counsel several times during his questioning in Chanute and Neodesha on March 31st. That state judge denied the motion to suppress, finding peti-

tioner's statements during the questioning were voluntary and with full understanding of his rights.

In the hearing later held in petitioner's state collateral action, the state court judge that presided over petitioner's trial was presented with a factual dispute as to whether petitioner had in fact requested counsel or simply asked if counsel should be called. That state court judge, weighing the contrary testimony of defendant and the police chief, resolved this factual dispute against petitioner. In the same proceeding, the state court judge also considered and rejected the facts alleged in support of petitioner's claim that police questioning was oppressive and intimidating.

Both state court judges viewed the videotape that contained a playback of the audiotape statement petitioner made earlier in Chanute, and the statements petitioner made in Neodesha over two taping sessions. That videotape is no longer part of the state court record, and no transcription was ever made.

However, if counsel had appealed from the admission of these recorded statements, resolution of the issue would have required examination of the claim under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), as well as *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Under *Edwards*, once an accused asserts his right to counsel, no valid waiver of that right is shown by his responses to further questioning initiated by the police even if *Miranda* warnings have been given. No further interrogation of the accused should take place unless initiated by the accused. *Id.*, 451 U.S. at 485, 101 S.Ct. at 1885. The Supreme Court held in *Bradshaw* that the accused's question of what was going to happen to him next "initiated" further conversation, and that police questioning thereafter did not violate *Edwards*.

■ While the issue had obvious merit and should have been raised, given the competing Supreme Court authorities at the time of petitioner's trial and the absence of the challenged videotaped statements, this court is unable to find that petitioner's state court appeal would have resulted in a reversal of petitioner's conviction.

Next, petitioner claims defense counsel was ineffective in not appealing the trial court's admission of statements petitioner made during Daugherty's preliminary hearing. Petitioner claims the admission of these statements, elicited pursuant to a plea agreement that was later withdrawn, violated his right against self incrimination.

The Kansas Court of Appeals found no error in the admission of this evidence, and thereby found no merit to petitioner's claim that ineffective counsel excused petitioner's failure to raise this issue in his direct appeal.

The record contains little information regarding petitioner's agreement to testify in the Daugherty hearing. There is no evidence of a written agreement, and nothing to indicate the express grant or scope of immunity for petitioner's Daugherty testimony. The transcript of that testimony indicates petitioner had discussed testifying with his counsel, and that petitioner understood his rights under the Fifth Amendment. Although petitioner did in fact testify, there is nothing to indicate petitioner ever attempted to assert a right under the agreement to enter a guilty plea to a single charge of rape.

The Kansas Court of Appeals found petitioner had not performed under the agreement because he did not testify in accord with the information he had previously provided police against Daugherty. *See e.g. U.S. v. Gerant*, 995 F.2d 505 (4th Cir.1993) (defendant materially breached agreement by misrepresenting his role in certain drug transactions); *U.S. v. Donahey* 529 F.2d 831 (5th Cir.) cert. denied 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976)(government entitled to withdraw from plea bargain wherein defendant had agreed to cooperate in prosecution of another defendant, but defendant instead gave evasive and misleading answers, gave answers which could not be verified, and refused to answer numerous questions); *U.S. v. Ballis*, 28 F.3d 1399 (5th Cir.1994) (recision of plea agreement allowed where defendant breached plea agreement by withholding important information about activities and otherwise gave untruthful testimony, and therefore had induced agreement by fraud).

■ Petitioner's breach of the plea agreement and the state's right to withdraw

the agreement, however, does not end this court's constitutional inquiry. Plea agreements are governed by principles of contract. *U.S. v. Cooper*, 70 F.3d 563 (10th Cir.1995). Although contract principles apply, the Due Process Clause requires such principles to be supplemented with concern that the bargaining process not violate the defendant's right to fundamental fairness. *U.S. v. Calabrese*, 645 F.2d 1379 (10th Cir.1981); *U.S. v. Rourke*, 74 F.3d 802, 805 (7th Cir.1996). *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (requirements of due process have guided this Court in evaluating the promises and conduct of state prosecutors in securing a guilty plea). Plea negotiations are to accord a defendant requisite fairness and be attended by adequate "safeguards to insure the defendant what is reasonably due (in) the circumstances." *Calabrese*, 645 F.2d at 1390 (*quoting Santobello*, 404 U.S. at 262, 92 S.Ct. at 498–99). A defendant is to be protected from overreaching by the government. *U.S. v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992), *cert. denied*, 507 U.S. 997, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993).

In the present case, the admission in petitioner's trial of his testimony in the Daugherty hearing not only allowed the State to withdraw from the plea, but also allowed the State to put petitioner at a disadvantage that was created by the promise of a favorable plea agreement. This clearly implicates a concern regarding the fundamental fairness of petitioner's criminal proceeding, and may well present a "dead-bang" claim that is obvious from the record. *Cf. U.S. v. Escamilla*, 975 F.2d 568, 571 (9th Cir.1992) (error to use confession pursuant to plea agreement where plea bargain later withdrawn).

■ However, given petitioner's uncontroverted breach of the agreement, the lack of any specific information regarding the protection extended under the agreement to petitioner's testimony, and the possibility that the error, even if recognized, would be considered harmless in light of the other evidence before the jury, the court again is unable to conclude the result of petitioner's direct appeal would have been altered if the issue had been raised.

In summary, the alleged errors of petitioner's counsel, taken individually or in total, do no lead this court to conclude that petitioner was denied constitutionally adequate counsel, or that any deficiencies resulted in prejudice to petitioner.

### RIGHT TO CONFRONTATION

Petitioner claims the stipulation to admit hearsay evidence of the victim denied him his right to confrontation.

■ As detailed herein, petitioner procedurally defaulted on this claim in the state courts. Absent a showing of cause and prejudice or a fundamental miscarriage of justice, federal courts are barred from reviewing defaulted claims. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643–44 (1986); *Steele v. Young,* 11 F.3d 1518, 1521 (10th Cir.1993). Cause and prejudice can be shown by a meritorious claim of ineffective assistance of counsel. *Hardiman v. Reynolds,* 971 F.2d 500, 505 (10th Cir.1992). However, the court has determined no such meritorious claim is presented in this case.

Even if the claim were properly raised, the court finds no habeas corpus relief is warranted.[3]

It is clear that constitutional rights can be waived. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *U.S. v. Stenzel,* 49 F.3d 658, 661 (10th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995). If a defendant chooses to enter a guilty plea and waive his right to a jury trial, right to confrontation, and right against self incrimination, the record must expressly show the defendant was aware of the important collection of rights being waived, and that the waiver was knowing, free and voluntary. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If no guilty plea is involved, a valid

waiver requires instead a showing that the relinquishment of the right was voluntary, and with full awareness of the nature of the right being abandoned and the resulting consequences. *Cf Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986) (requirements stated for waiver of *Miranda* Fifth Amendment rights). To make this determination, the court is to evaluate the particular facts and circumstances surrounding the waiver, "including the background, experience, and conduct of the accused." *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023.

■ A review of the facts and circumstances surrounding petitioner's signed stipulation convinces the court that petitioner and his counsel were willing to waive their right to confront the victim. Petitioner's decision to do so was voluntary and with the understanding that the victim would not take the stand and be subject to cross examination. The fact that the scope of the information provided through the stipulated agreement may have exceeded that anticipated by petitioner does not, under the circumstances presented in this case, render petitioner's waiver invalid.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is denied.

---

**3.** The court notes petitioner's statement in the Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. 4) that the state district court judge "misstated the fact that the issue was being raised under ineffective assistance of counsel, and dismissed it because he considered it waived on the merits." Doc. 4, p. 21. This court's reading of the transcript does not support this statement.

Without expressly identifying it as Issue IV in petitioner's memorandum for relief under K.S.A. 60–1507, the state court judge referenced petitioner's claim that "Mr. Hawkins did not make a valid waiver of his rights to confrontation," and then proceeded to comment on petitioner's waiver of the right to now raise a confrontation claim (R.II, 76–77). Petitioner's attorney, rather than the judge, then commented that the issue was being raised in relation to ineffectiveness of counsel (R.II, 77). The judge correctly responded "That particular argument [Issue IV] talks about the right of confrontation. And I'll get to the ineffectiveness of counsel [Issue VI] in a moment." (R.II, 77).