POSNER, Circuit Judge.
On the night of December 19, 2007, Reginald Pittman, a pretrial detainee in the Madison County, Illinois, jail, hanged himself from the bars of his cell (of which he was the only occupant) with a blanket. He did not die, but he sustained brain damage that has left him in a vegetative state, cared for entirely by his mother with no government benefits. This suit, brought on his behalf, charges deliberate indifference by guards and other jail staff to the risk of his attempting suicide, in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There are ancillary state-law claims, but they received little attention at the trial or in the parties’ submissions to us; so since we’re reversing and remanding the district court’s decision, we’ll defer consideration of those claims to a subsequent appeal, if any.
Pittman had left a suicide note in which he said that he was killing himself because the guards were “fucking” with him by not letting him see “crisis,” by which he meant crisis counselors (the members of a crisis intervention team at the jail), whose duties include trying to prevent the inmates from killing or injuring themselves. .Although the “National Study of Jail Suicide: 20 Years Later,” conducted by the Justice Department’s National Institute of Corrections in 2006 (the year before Pittman’s suicide attempt), found that jail suicides had declined significantly since 1986, the study also found that suicides in jails and other detention facilities were three times as frequent as suicides by free persons. Lindsay M. Hayes, “National Study of Jail Suicide: 20 Years Later,” pp. 1, 46 (National Institute of Corrections, April 2010).
Although Madison County was. among the defendants named, in Pittman’s complaint, along with two of the county’s sheriffs, the defendants who are the particular focus of the litigation are jail guards Randy Eaton and Matt Werner. In 2011 the district court granted summary judgment in favor of all the defendants, but our court reversed as to Eaton and Werner (and so remanded) on the ground that there was a genuine issue of fact as to whether they had been deliberately indifferent to the risk that Pittman would attempt suicide. Pittman ex. rel. Hamilton v. County of Madison, 746 F.3d 766, 777-78 (7th Cir. 2014). The case was then tried to a jury, which returned a verdict in favor of both defendants, precipitating this appeal by Pittman’s guardian.
The key witness for Pittman was a man named Bradley Banovz (pronounced “Ba-noviz”), who occupied a cell adjacent to Pittman’s when Pittman hanged himself. *736 He testified at the trial that in the 'five days preceding Pittman’s , suicide attempt Eaton and Werner had ignored Pittman’s requests to see members of the jail’s crisis staff.
Some three hours after the suicide attempt a county detective obtained, in an interview- room in the jail, a 25-minute interview with Banovz about the attempt, which was captured on video. Pittman’s lawyer attempted to introduce the video at the trial, for while Banovz testified at the trial, that was seven years after the suicide attempt and video interview; and while he’d been lucid and articulate in the video interview he was a terrible witness at the trial, with poor recollection, an alternately hostile and flippant demeanor, and an inability to counter evidence of his criminal record harped on by defense counsel.
The trial transcript shows that defense counsel had stipulated on the second day of the trial that if the plaintiffs lawyer put Banovz on the stand, the defense would not object to the admission of the 2007 video in evidence, the parties having agreed to that before trial. In defense counsel’s words, “the agreement was thát if, if Bradley Banovz would testify, that, that [plaintiff counsel] could offer the video and the statement.” Yet as soon as the video began, the defendants’ lawyer objected, and though he called the objection “pro forma” and "said he knew the video would be played (for remember the stipulation), the "district judge sustained the objection. Twice more during the "trial the plaintiffs lawyer moved to' admit the video, and twice more the defendant’s lawyer objected. Each-time the district judge sustained the objection and so the video wasn’t shown after all—even though Banovz’s testimony was the lynchpin of the plaintiffs case and the defendants had stipulated to the showing of the video.
. The judge’s ground.- for sustaining the objections to showing the video was that the video was hearsay because it recorded a statement that Banovz had made out of court (i.e., in the interview room at the jail in 2007). But of course the defendants’ lawyer had known all this when he had agreed to allow the video to be placed in evidence. And he gave no reason for retracting his agreement; he just said that his clients had changed their minds—but so what? Stipulations are not so easily set aside. See Fed. R. Civ. P. 36(b), 16(e).
Even if the video testimony was hearsay of the sort normally excluded from a trial, the defendants had—to repeat—stipulated to its admissibility, and a stipulation is binding unless it creates “manifest injustice” (see Rule 16(e)) or was made inadvertently or on the basis of a legal or a factual error." United States v. Wingate, 128 F.3d 1157, 1161 (7th Cir. 1997); see also United States v. Bell, 980 F.2d 1095, 1097 (7th Cir. 1992); Lloyd v. Loeffler, 694 F.2d 489, 495 (7th Cir. 1982); Cummins Diesel Michigan, Inc. v. The Falcon, 305 F.2d 721 (7th Cir. 1962); United States v. Kanu, 695 F.3d 74 (D.C. Cir. 2012). None of these factors is present in this case. The district judge said that she didn’t think she had the authority to enforce the agreement, but “agreements to waive hearsay objections are enforceable.” United States v. Mezzanatto, 513 U.S, 196, 202, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995).
True, a judge can exclude evidence under Fed. R. Evid, 403 even if the parties have stipulated its admissibility, provided the harm of admitting it would substantially outweigh its probative value. See Noel Shows, Inc. v. United States, 721 F.2d 327, 330 (11th Cir. 1983) (per curiam). But the district court did not .invoke Rule 403; nor is there any indication that playing the tape would have confused the jury, unfairly , prejudiced the defendants, prolonged *737 the trial, or otherwise impaired- justice. What is more, defense -counsel told us at the oral argument that he thought the video actually strengthened the defense case, and though it did not, counsel’s statement took all the wind out of his sails. For he would not have objected to the playing of the video at the trial had he thought it would strengthen the defense;-he knew it would have weakened the defense.
The district judge brushed aside all the reasons why the video should have -been allowed in evidence, and excluded it without giving any reason why it should be excluded.
Now it might seem that because Banovz testified at trial, the video would have added nothing. But no; as Banovz acknowledged at the trial, the passage of seven years had dirnmed his recollection to a considerable extent—and as we’ve said, his demeanor at trial was notably different from his demeanor in the video. But with his memory refreshed by a transcript of the video recording, at the trial he remembered that in the days leading up to the suicide attempt Pittman had been depressed and worried and, Banovz believed, could not “handle the solitary confinement,” and Pittman had asked defendant (as he is in this lawsuit) Werner to contact crisis so that crisis would examine Pittman for “mental stability.” That conversation took place on a Friday, Banovz testified, and Werner had promised to refer Pittman to crisis on Monday—but did not do so, because he didn’t work that Monday. Pittman hanged himself two days later without having been referred to crisis. Banovz also testified that defendant Eaton had told Pittman the night before he hanged himself that he could consult a crisis counselor, and that Pittman had been crying for hours that night. But Eaton hadn’t followed through by referring Pittman to crisis, and that failure, if Banovz is believed, constituted deliberate indifference to a danger that Eaton had reason to know was real.
Some details mentioned in the video interview were not included in Banovz’s trial testimony. On the videotape Banovz says that Werner thought Pittman was just joking about-needing to see crisis; but at the trial, Werner’s deposition- cast doubt on whether he was able to make such a judgment. For it turned out that he’d never been told by his superiors' (or at least couldn’t recall having been told by them) what to do if he thought an inmate was at risk of committing suicide, what a “suicide crisis” was, or what the jail’s suicide prevention policy was—if there was such a policy.
It was senseless to think that testimony by Banovz seven years after Pittman’s suicide attempt was as or more reliable than his recorded testimony made three hours after the attempt. And anyway the stipulation between the parties entitled the plaintiff to play the tape at the trial. The case being close, 'showing the video to the jury could have resulted in a verdict for the plaintiff—-and so the judge’s error was not harmless. The defendants and other witnesses (including other jail personnel besides Werner and Eaton) testified that it was the jail’s policy for my reference to suicide by an inmate of the jail to require an immediate referral to crisis even if the reference appeared to be a joking one. Although Werner and Eaton testified that •Pittman hadn’t mentioned suicide or- asked to be referred to crisis on the nights in question, they admitted not- remembering any of the conversations they’d,had.with Pittman on those nights, so their -testimony was worthless. And Werner admitted in a pretrial deposition that he didn’t believe he’d- ever been “given any information about the signs and symptoms of suicide in [his] training” at the jail. ..:
*738 Pittman’s brief raises several other issues relating to how the judge conducted the trial. None of these arguments has merit.
Having for the reasons stated no assurance that Pittman’s claim was fairly tried, we hereby vacate the judgment and remand the case for a retrial conducted in conformity with the analysis in this opinion.