
Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## JEFFREY GUERRERO CRUZ,
Defendant-Appellant.

Supreme Court Case No. CRA21-007
Superior Court Case No. CF0301-18

## OPINION

## Cite as: 2023 Guam 1

Appeal from the Superior Court of Guam
Argued and submitted on March 23, 2022
Via Zoom video conference

Appearing for Defendant-Appellant:
F. Randall Cunliffe, *Esq.*
Cunliffe & Cook
A Professional Corporation
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.* (briefed)
Stephanie E. Mendiola, *Esq.* (argued)
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913


E-Received
2/22/2023 4:30:18 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.[1]

**MARAMAN, J.:**

[1]    Defendant-Appellant Jeffrey Guerrero Cruz appeals from a judgment of conviction on two counts of Second Degree Criminal Sexual Conduct (as a First Degree Felony) against minor victim K.T.C.  On appeal, Cruz asserts ineffective assistance of counsel, challenging trial counsel's stipulation to admit prejudicial evidence, failure to cross-examine K.T.C. regarding the allegations, and trial counsel's demeanor throughout the trial and closing argument.  We reject Cruz's argument and affirm the judgment of conviction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]    Jeffrey Guerrero Cruz was accused of, and arrested for, inappropriately touching minor victim K.T.C. while babysitting K.T.C. and her siblings.  During the trial, K.T.C. testified that Cruz was helping her with homework when he touched her vagina.  K.T.C. testified that she told Cruz to "stop" and tried to push him away before asking to use the restroom.  Instead of using the restroom, K.T.C. went next door and sought help from family members.  K.T.C. stated that she informed her godmother and grandmother that Cruz had touched her vagina.  K.T.C. then called her mother, who was driving K.T.C.'s father to work, so K.T.C. could speak with her about what had happened.  At some point during the conversation, K.T.C.'s mother recorded the call.  During the call, K.T.C. told her mother that Cruz had touched her vagina, and that Cruz made her touch his genitals.  K.T.C.'s parents returned home and confronted Cruz, after which the police were called.

---

[1] The signatures in this opinion reflect the titles of the justices at the time this matter was argued and submitted.

**[3]**    An indictment was filed against Cruz, charging him with Second Degree Criminal Sexual Conduct (as a First Degree Felony) against minors K.R.T. (Counts One and Two), K.T.C. (Counts Three, Four, and Eight), K.N.T. (Counts Five and Six), and K.S.C. (Count Seven). The original indictment was later amended to dismiss Count Four.

**[4]**    During the trial, Cruz's defense counsel stipulated with Plaintiff-Appellee People of Guam ("People") to admit into evidence the recording of K.T.C.'s conversation with her parents, in which K.T.C. alleged that in addition to Cruz touching her vagina, Cruz made her touch his genitals (Count Seven, formerly Count Eight). On the stand, K.T.C. testified that Cruz had touched her vagina (Count Three), but she did not testify that Cruz had caused her to touch his genitals (Count Seven, formerly Count Eight). The recording of the phone call between K.T.C. and her parents was played to the jury while K.T.C. was on the witness stand, but the prosecutor stopped the playback after about a minute, before the part of the recording about Count Seven—i.e., where K.T.C. reports that Cruz made her touch his genitals. During cross-examination, Cruz's counsel did not question K.T.C. regarding the recording or Count Three, nor did he press her on omitting testimony on Count Seven. Before the People rested its case, the prosecutor sought to replay the recording of the phone call between K.T.C. and her parents, explaining to the judge at sidebar he had interrupted the earlier playback while K.T.C. was on the stand because he could see that she was becoming upset. The judge noted that the video had been admitted into evidence, and defense counsel agreed. The prosecutor played the entire recording to the jury during closing arguments. Defense counsel replayed several parts of the recording during his closing arguments.

**[5]**    The jury found Cruz guilty of Counts Three and Seven. Cruz was acquitted of Counts One, Two, Four, Five, and Six. Cruz timely appealed.

## II.  JURISDICTION

**[6]**     This court has jurisdiction over an appeal from a final judgment of conviction under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-262 (2022)), 7 GCA §§ 3107 and 3108(a) (2005), and 8 GCA § 130.15(a) (2005).

## III.  STANDARD OF REVIEW

**[7]**     "Ineffective assistance of counsel claims are mixed questions of law and fact, which we review *de novo*." *People v. Guerrero*, 2017 Guam 4 ¶ 18 (quoting *People v. Meseral*, 2014 Guam 13 ¶ 13).  Although an ineffective assistance of counsel claim may be heard on direct appeal, these claims are typically more appropriately brought on a petition for a writ of habeas corpus, as these claims usually require an "evidentiary inquiry beyond the official record."  *People v. Leon Guerrero*, 2001 Guam 19 ¶ 12 (quoting *People v. Root*, 1999 Guam 25 ¶ 14); *see also Guerrero*, 2017 Guam 4 ¶ 60.  This court has, however, reviewed ineffective assistance of counsel claims if the record is "sufficiently complete to make a proper finding." *People v. Moses*, 2007 Guam 5 ¶ 9 (quoting *Leon Guerrero*, 2001 Guam 19 ¶ 12).

## IV.  ANALYSIS

### A.  The *Strickland* Test

**[8]**     The Sixth Amendment states that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  The Organic Act confers this same right to criminal defendants in Guam.  *See* 48 U.S.C.A. § 1421b(g) (Westlaw through Pub. L. 117-262 (2022)) ("In all criminal prosecutions the accused shall have the right . . . to have the assistance of counsel for his defense.").  In determining whether a defendant was deprived of effective assistance of counsel, this court uses a two-part test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *Guerrero*, 2017 Guam 4

¶ 59. The first part requires that a defendant demonstrate that his trial counsel's performance was deficient and fell below prevailing professional norms. The second part requires that the defendant prove the deficient performance prejudiced him and deprived him of a fair trial. *Strickland*, 466 U.S. at 687; *see also Angoco v. Bitanga*, 2001 Guam 17 ¶ 8; *Guerrero*, 2017 Guam 4 ¶ 59.

[9] To fulfill the first prong of *Strickland*, Cruz must show that "the behavior complained of falls below prevailing professional norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996) (citing *Strickland*, 466 U.S. at 689). To prove deficient performance, the defendant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. An inquiry into counsel's performance probes "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Significantly, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689; *see also Moses*, 2007 Guam 5 ¶ 42 ("High deference is given when reviewing an attorney's performance."). In engaging in such an inquiry, "[the] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Meseral*, 2014 Guam 13 ¶ 46 (quoting *Strickland*, 466 U.S. at 689).

[10] To satisfy the second prong and establish prejudice by counsel's ineffective assistance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Cruz must "affirmatively prove prejudice" to support his claim. *Id.* at 693. Both

prongs of the *Strickland* analysis must be satisfied for Cruz to show ineffective assistance of counsel. *Id.* at 697.

[11]     Cruz now urges that, during trial proceedings, counsel made several errors that constituted ineffective assistance.   Specifically, Cruz challenges trial counsel's stipulation to admit into evidence the recording of K.T.C.'s call with her parents, counsel's failure to cross-examine K.T.C. regarding the two counts of Second Degree Criminal Sexual Conduct, and counsel's demeanor throughout the trial and closing argument.

### 1. Cruz's stipulation with the People

[12]     Cruz claims that trial counsel's stipulation to admit the recorded call constituted deficient performance, as it prejudiced the trial's outcome by introducing evidence of Count Seven, which K.T.C. did not testify to at trial.  Appellant's Br. at 8 (Aug. 30, 2021).  Cruz further contends that the stipulation constituted ineffective assistance because the admission of the recording was purely detrimental and provided him no benefit. *Id.*  The People dispute this, arguing that the stipulation was not ineffective assistance because it was part of trial counsel's overall strategy.  Appellee's Br. at 3, 5-7 (Sept. 29, 2021).

[13]     "Courts have 'liberally enforced' agreements to waive" evidentiary rules, and the U.S. Supreme Court has held that "agreements to waive hearsay objections are enforceable." *United States v. Mezzanatto*, 513 U.S. 196, 202 (1995).  Stipulations, which by nature signal the intentional relinquishment of all rights to challenge the admissibility of the stipulated evidence, are clear examples of waiver. *United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004). Existing case law is clear that parties can waive a hearsay objection by stipulation, "and a stipulation is binding unless it creates 'manifest injustice' . . . or was made inadvertently or on the basis of a legal or factual error." *Pittman by Hamilton v. County of Madison*, 863 F.3d 734 (7th Cir. 2017);

*see, e.g.*, *Hawkins v. Hannigan*, 979 F. Supp. 1397, 1405 (D. Kan. 1997) (finding no habeas corpus relief warranted by defendant's stipulation to admit hearsay evidence of victim because "[i]t is clear that constitutional rights can be waived"), *aff'd*, 185 F.3d 1146 (10th Cir. 1999).

[14]    When conduct is "legitimate trial strategy," it cannot provide the basis for a claim of ineffective assistance of counsel. *In re Dependency of S.M.H.*, 115 P.3d 990, 999 (Wash. Ct. App. 2005). Scrutiny of counsel's performance is highly deferential, and the conduct of trial counsel need not be perfect to fall within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 669. "We presume that counsel's choices at trial fall under the wide range of reasonableness and professionalism granted to [counsel]; and reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot alone serve as a basis for a claim of ineffective assistance." *Harding v. State*, 613 S.W.3d 522, 531 (Mo. Ct. App. 2020).

[15]    Other jurisdictions have considered the challenge now posed by Cruz: stipulations during trial proceedings and subsequent ineffective assistance of counsel claims. In *State v. Mederos*, the Supreme Court of Montana determined that the defendant's stipulation to introduce video recordings of the victims' forensic interviews was a strategic move, as counsel used the recording to highlight inconsistencies between testimony at trial and during the forensic interviews. 312 P.3d 438, 443-44 (Mont. 2013). Counsel was found to have acted within "prevailing professional norms," as the stipulation could help the defendant's case and was therefore reasonable professional assistance. *Id.* at 444.

[16]    Similarly, in *Hawkins v. Hannigan*, the U.S. District Court for the District of Kansas found no ineffectiveness in defense counsel's stipulation to the admission of hearsay evidence of the victim's identification of the defendant as her assailant. 979 F. Supp. at 1401-03. The court determined that the stipulation reflected a strategic choice to keep the frail and elderly victim from

taking the stand, and defense counsel used the audiotaped testimony of the victim to highlight inconsistencies between the victim's description of her assailant and her identification of the defendant. *Id.* at 1402. The Tenth Circuit affirmed, finding that "counsel's decision to enter the stipulation was a matter of prudent trial strategy." *Hawkins v. Hannigan*, 185 F.3d 1146, 1155 (10th Cir. 1999).

[17]    In *Curtis v. State*, the Indiana Court of Appeals found that trial counsel's decision to stipulate to the admission of children's pretrial hearsay statements alleging sexual abuse by the defendant did not amount to ineffective assistance of counsel. 905 N.E.2d 410, 414-15 (Ind. Ct. App. 2009). The court agreed with the post-conviction court's finding that counsel stipulated to the admission of the children's statements "because they 'were different, inconsistent, and bizarre' and therefore would serve to give the defense 'the upper hand in creating reasonable doubt.'" *Id.* at 414. The Court of Appeals concluded that counsel's stipulation was strategic and did not rise to the level of ineffective assistance, even though the children never testified at trial about the sexual abuse. *See id.* at 415.

[18]    Here, comparable to the attorneys in *Mederos*, *Hawkins*, and *Curtis*, Cruz's counsel's stipulation to admit the recording into evidence was a strategic choice. Trial counsel tried to use the recording to attack and discredit K.T.C.'s parents, *see* Transcript ("Tr.") at 68-70 (Jury Trial, Nov. 6, 2019); Tr. at 130-32 (Jury Trial, Nov. 8, 2019), to cast doubt on K.T.C.'s testimony, *see id.* at 148, 150, 152 (Jury Trial, Nov. 8, 2019), and to suggest possible motives behind the allegations, *see id.* at 166, 172; Tr. at 11 (Jury Trial, Nov. 6, 2019) (explaining on first day of trial the "theory" behind Cruz's defense was that the parents used their influence to "force these children to say that [Cruz touched them]"). We agree with the People that this strategy is exemplified throughout the record. Specifically, counsel demonstrated this strategy by: (1)

initially objecting to the recording as hearsay and refusing to agree to the introduction of the recorded call before K.T.C.'s testimony, though admitting a desire to eventually introduce the recording when K.T.C. testified, *see* Tr. at 2-10, 122 (Jury Trial, Nov. 6, 2019); (2) not challenging K.T.C. during cross-examination about omitting Count Seven from her testimony, *see id.* at 128-50; (3) moving for a judgment of acquittal on Count Seven, based on the argument that the recording was not substantive evidence and that K.T.C.'s statements during the call were inconsistent with her testimony, *see* Tr. at 87-88, 92-95 (Jury Trial, Nov. 7, 2019) ("The biggest problem with this is that [K.T.C.] got up on the stand and did not say this allegation at all. She put on no evidence of it. What the Prosecution is going to tell you is that the video claims that but that is not substantive evidence. I cannot cross examine a video."); (4) centering closing arguments around the recording to attack K.T.C.'s parents by maintaining that K.T.C.'s father was under the influence of drugs and had coached K.T.C. and her siblings to lie, *see* Tr. at 128-77 (Jury Trial, Nov. 8, 2019) ("It's so proven on there it's not even funny that that drug addict of a human being [K.T.C.'s father] -- he is. He's a major drug addict and an evil person just by the testimony."); and (5) discrediting K.T.C.'s testimony by comparing the recording to her statements on the stand, arguing that K.T.C.'s parents had asked her leading questions while recording to supply allegations, *see id.* at 135-36, 140 ("[K.T.C.] doesn't really say it. [K.T.C.'s father] keeps saying crazy things, and she's like going yes, no, yes, no, yes, no. Okay. That's how you train a child to do something. You get in their face and start demanding this is what happened and then one time he says remember.").

[19]    Considering these instances, we recognize that the admission of the recording into evidence was essential to trial counsel's deliberate strategy to show the allegations were fabricated. While the admission may not have materialized as counsel intended, being the only evidence of Count

Seven, the strategy was successful in aiding in Cruz's acquittal on the other charges. *See* Tr. at 43 (Jury Trial, Nov. 12, 2019). The stipulation was strategic, and taken in this light, counsel's actions do not appear to fall below an objective standard of reasonableness. Cruz's stipulation with the People, as a legitimate trial strategy, cannot be the basis for an ineffective assistance of counsel claim.[2]

### 2. Trial counsel's failure to cross-examine K.T.C.

[20]     Next, Cruz challenges trial counsel's failure to question K.T.C. about the incidents for which Cruz was convicted. Cruz alleges "counsel's failure to inquire into the circumstances of the alleged incidents precluded him from being able to reasonably argue that the incidents did not occur, or could not have occurred as testified to." Appellant's Br. at 10.

### a. Prong One: Deficient Performance

[21]     Instead of cross-examining K.T.C. about the acts committed by Cruz, trial counsel cross-examined K.T.C. and her siblings about the layout of the room where the incident took place, about their relationship with their parents, and about whether Cruz had ever been "mean" to them. *See* Tr. at 137-49, 176-81 (Jury Trial, Nov. 6, 2019); Tr. at 19-31, 53-69 (Jury Trial, Nov. 7, 2019).

[22]     It is not an uncommon tactic for defense counsel to avoid cross-examining victims of criminal sexual conduct about the sex acts performed. For example, in *Tucker v. State*, the defendant argued that trial counsel was ineffective for failing to cross-examine the victims about

---

[2] Before the stipulation to introduce the recording was made, the People argued that the recording could be admitted under the excited utterance exception. Tr. at 42 (Jury Trial, Nov. 5, 2019). But because of the stipulation, the trial court did not make an evidentiary ruling on this hearsay exception. *See* Tr. at 2, 5-10 (Jury Trial, Nov. 6, 2019). The People argue that the stipulation was not ineffective assistance because the recording would have been admissible as an excited utterance regardless of the stipulation. Appellee's Br. at 8-10 (Sept. 29, 2021). However, as an appellate court, we are limited to the review of errors and rulings made by the trial court. In instances where the trial court does not rule on evidentiary matters, "it is not the function of an appellate court to make such evidentiary rulings in the first instance." *Mateel Env't Just. Found. v. Edmund A. Gray Co.*, 9 Cal. Rptr. 3d 486, 496 (Ct. App. 2003) (quoting *Sambrano v. City of San Diego*, 114 Cal. Rptr. 2d 151, 159 (Ct. App. 2001)). Even so, because Cruz waived this hearsay objection by stipulating to the introduction of the recording, we need not address the excited utterance contention further.

the inconsistencies in their accounts of sexual abuse. 468 S.W.3d 468, 474 (Mo. Ct. App. 2015). The court disagreed, finding that trial counsel's decision to avoid cross-examining the child sex abuse victims altogether, and instead cross-examining the victims' mother to reinforce the theory that the mother made the children fabricate the sex abuse allegations, was a strategy to avoid further upsetting the victims in front of the jury. *Id.* at 474-75. Because of the circumstances, this strategic decision was considered reasonable and did not constitute ineffective assistance. *Id.* at 475.

[23]    In *Jackson v. State*, the Supreme Court of Wyoming determined that counsel made a strategic choice, that did not constitute ineffective assistance of counsel, when failing to cross-examine a juvenile victim. 445 P.3d 983, 990 (Wyo. 2019). The court noted that counsel's belief that it was not to the "fundamental advantage" of the defense to cross-examine the victim because the cross-examination would be potentially detrimental was "sound trial strategy" that should not be questioned. *Id.*

[24]    Thus, in line with the procedural stance in other jurisdictions, were it not for the uncontested stipulated evidence, trial counsel's strategy to avoid confronting K.T.C. and her siblings would not "fall below prevailing professional norms" and thus not satisfy the first *Strickland* prong. We do not find Cruz's contention particularly compelling, as trial counsel was arguably acting strategically while cross-examining K.T.C., even if this strategy did not work as expected. Trial counsel is "not deficient merely because he chose to pursue a different line of defense than appellate counsel would have pursued." *People v. Quintanilla*, 1998 Guam 17 ¶ 12 (quoting *United States v. Chambers*, 918 F.2d 1455, 1461 (9th Cir. 1990)). "[T]he manner in which counsel cross-examines a particular witness is a strategic choice and therefore 'virtually

unchallengeable.'" *Kessler v. Cline*, 335 F. App'x 768, 770 (10th Cir. 2009) (unpublished) (quoting *Strickland*, 466 U.S. at 690). The conduct here does not satisfy the first *Strickland* prong.

### b. Prong Two: Prejudice

[25] In considering the second *Strickland* prong, the People claim that trial counsel's failure to cross-examine K.T.C. on the sex acts did not prejudice Cruz, and that any cross-examination regarding the incident would not have changed the outcome of the trial. *See* Appellee's Br. at 12. After K.T.C. and her siblings testified, trial counsel put Cruz on the witness stand to testify in his defense. Cruz refuted all allegations and maintained that the children made inconsistent statements regarding the allegations. Tr. at 28-43 (Jury Trial, Nov. 8, 2019). Cruz was acquitted of five of the original eight counts (and another count—Count Four—was dismissed upon motion), despite trial counsel avoiding discussing the sex acts with the child witnesses. *See* Appellee's Br. at 12.

[26] We are inclined to agree with the People for two reasons. First, there are few cases in which failure to cross-examine constitutes prejudice, and those occur only in exceptional circumstances when there are no other witnesses or corroborating evidence, and the case comes down to the victim's word against the defendant's word. *See, e.g.*, *Brown v. State*, 877 P.2d 1071, 1073 (Nev. 1994) (trial counsel failed to cross-examine the only witness at the correct time due to a misapprehension of proper trial procedure, demonstrating extreme ineptitude); *Higgins v. Renico*, 470 F.3d 624, 633-35 (6th Cir. 2006) (trial court found prejudice where trial counsel failed to cross-examine the only eyewitness to the crime, and where the failure was due to lack of preparation). *But see* John M. Burkoff & Nancy M. Burkoff, *Ineffective Assistance of Counsel* § 7:33 (Aug. 2022 Update) ("Whether or not courts address counsel's performance when impeaching and cross-examining witnesses at trial, under a variety of circumstances, courts have concluded that alleged errors regarding witnesses did not prejudice the defendant.").

[27]    Second, while cross-examining K.T.C. might have worked in Cruz's favor, it might have worked against him. While K.T.C. was on the stand and the recording was first introduced, the prosecutor played only the first minute of the recording before quickly moving on. Tr. at 122-24 (Jury Trial, Nov. 6, 2019). The following day, the prosecutor stated to the judge during sidebar that the reason the video was not played in its entirety when it was first admitted was "because it was torturing [K.T.C.]. I saw her crying. She was rubbing her face, and it made me feel bad. So I didn't want to torture her for another 11 minutes of that." Tr. at 75 (Jury Trial, Nov. 7, 2019). Pressing a witness to contradict previously recorded statements might be an effective strategy; however, understanding human emotion is also essential in this scenario. If the jury saw trial counsel pressing a crying child for details of her sexual abuse, sympathy might be elicited for the victim, threatening any jury favor that trial counsel may have gained for Cruz. *See Guam v. Jackson*, D.C. No. 84-00062A, S.C. Crim. No. 13F-84, 1986 WL 68512, at *3 (D. Guam App. Div. Feb. 28, 1986). Were K.T.C. the only witness present, a presumption of prejudice for failing to cross-examine might be warranted. However, here, multiple witnesses and the recording corroborated her testimony. The effect of additional cross-examination of K.T.C. is unknown. Given this uncertainty, we do not find there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the [trial] would have been different." Therefore, the second *Strickland* prong is unsatisfied. *Strickland*, 466 U.S. at 669.

### 3. Trial counsel's demeanor and closing argument

[28]    Finally, Cruz argues that trial counsel's manner throughout the trial and his "bizarre" closing argument resulted in the denial of a fair trial. Appellant's Br. at 10. Cruz alleges trial counsel's behavior and demeanor during proceedings, in addition to an "unintelligible" closing argument, was detrimental and constituted ineffective assistance. *Id.*

### a. Prong One: Deficient Performance

[29]    Throughout the trial, Cruz's counsel presented a theory that K.T.C. and her siblings were forced by their parents, who were under the influence of drugs, to fabricate the accusations.  To communicate this theory, during the proceedings and closing arguments, trial counsel attacked the family as neglectful and abusive, and disparaged the prosecution as "liars."  *See, e.g.*, Tr. at 128, 130, 145 (Jury Trial, Nov. 8, 2019); Tr. at 18-19, 156 (Jury Trial, Nov. 7, 2019).

[30]    When considering trial counsel's summation technique, judicial review is highly deferential.  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).  "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."  *Id.* at 5-6.  Relatedly, having "arrogant and insulting" demeanor towards the court and witnesses is not dispositive in making a finding of deficient performance.  *See, e.g.*, *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 955 (7th Cir. 1986).  This is so even when this behavior results in admonishment of the attorney by the trial judge.  *Id.*

[31]    In *United States ex rel. Kleba v. McGinnis*, trial counsel exchanged hostile words with witnesses, the court, and the prosecution.  *Id.* at 955.  While the trial court reprimanded counsel for this conduct, the Seventh Circuit held that this behavior did not constitute deficient performance because the finder of fact "did not appear to hold [counsel's] conduct against the petitioner" and because "[t]he record reveal[ed] that the trial court conducted the proceedings fairly and impartially."  *Id.* at 955-56.  The court noted that even if counsel's performance were deficient, the record would fail to support an allegation that counsel's demeanor prejudiced the defendant during trial.  *Id.* at 956.

**[32]**    Similarly, other courts have held that defense counsel was not ineffective for making disparaging remarks about the prosecutor, even when such remarks resulted in rebukes from the trial court. *See, e.g.*, *Cammon v. State*, 500 S.E.2d 329, 334 (Ga. 1998). In *Cammon v. State*, the Georgia Supreme Court noted that counsel apologized and that "the remark was the apparent result of an overly zealous and emotional representation" of the defendant. *Id.* "[A]lthough counsel was rebuked, it was for exceeding, not falling short of, the bounds of effective representation." *Id.*

**[33]**    While some courts have indicated belligerent trial counsel to be deficient, this has typically been done only where trial counsel's behavior was highly prejudicial and affected the proceedings. *See, e.g.*, *Ward v. United States*, 995 F.2d 1317, 1322 (6th Cir. 1993) (court record indicated that jurors were openly laughing at defense counsel; that judge stated on several occasions he could not follow defense counsel's arguments; that defense counsel was inappropriately hostile, paranoid, confused, and rambling; and that defense counsel opened the door to damaging character evidence against his client even after the judge and government counsel intervened in an effort to stop him).

**[34]**    Here, we understand Cruz's trial counsel to have made a strategic decision to criticize the People and the children's parents, instead of attacking the alleged victims. While counsel's comments towards the prosecution should not be excused or overlooked, the tactical deference provided trial counsel, in addition to the lack of evidence in the record indicating this conduct affected the fairness of the trial, is sufficient to demonstrate that counsel's performance did not fall short of the bounds of effective representation. Thus, while trial counsel's representation may not have entirely fulfilled professional standards, it does not constitute deficient performance, and therefore does not satisfy the first *Strickland* prong.

### b. Prong Two: Prejudice

[35]    The People argue that even if trial counsel's summation technique constituted deficient performance, it did not prejudice Cruz because the jury acquitted Cruz on all but two of the charges. *See* Appellee's Br. at 14. The People note that counsel made a strategic choice to vilify the parents and the prosecutor rather than rebuke the children, as attacking the children could have alienated the jury. *Id.* at 15. Cruz makes no rebuttal to this specific issue, claiming only a general lack of strategy by trial counsel. *See* Appellant's Reply Br. at 6 (Oct. 13, 2021). Again, we agree with the People.

[36]    "[W]e must normally presume that a jury has been persuaded by the strength of the evidence and not by the eloquence of counsel" because "[o]ne man's belligerent argumentativeness is another man's vigorous advocacy." *People v. Caballero*, 533 N.E.2d 1089, 1092 (Ill. 1989). Here, the jury was given explicit instructions that the arguments and statements of the lawyers were not evidence. Tr. at 27-28 (Jury Trial, Nov. 12, 2019); Record on Appeal, tab 50 at 26 (Jury Instrs., Nov. 8, 2019). Because we can presume that the jury abided by these instructions and based the verdict on the strength of the evidence and not the eloquence of counsel, any personal attacks by defense counsel would not equate to deficient performance. Because the jury did not appear to hold counsel's conduct against Cruz as shown by verdicts of acquittal for Counts One, Two, Four, Five, and Six, and because the record indicates that the trial court conducted the proceedings fairly and impartially, the record fails to support an allegation that counsel's demeanor prejudiced Cruz during trial. *See McGinnis*, 796 F.2d at 956. Cruz's claim likewise does not satisfy the second *Strickland* prong.

//

//

## V.  CONCLUSION

**[37]**     Cruz's decision to stipulate and waive any objection to the introduction of the recording was a deliberate strategy, and given the circumstances, this trial strategy was reasonable and did not amount to ineffective assistance of counsel.  Further, we reject these ineffective assistance claims because Cruz has not satisfied the *Strickland* test concerning trial counsel's demeanor, closing statements, and failure to cross-examine K.T.C.  The judgment of conviction is **AFFIRMED**.



|                     /s/                     |                     /s/                     |
| :-----------------------------------------: | :-----------------------------------------: |
|              ROBERT J. TORRES               |            KATHERINE A. MARAMAN             |
|              Associate Justice              |              Associate Justice              |


                              /s/
                      F. PHILIP CARBULLIDO
                          Chief Justice